Henry *v.* Lit Brothers, Inc., Appellant.

544

Argued September 20, 1960.   Before RHODES, P. J., GUNTHER, WRIGHT, WOODSIDE, ERVIN, WATKINS, and MONTGOMERY, JJ.

*Raymond J. Porreca,* for appellants.

*Morton B. Wapner,* with him *Winokur & Kahn,* for appellee.

OPINION BY WRIGHT, J., November 16, 1960:

This is a workmen's compensation case. The Referee found that claimant was totally disabled as the result of an injury by accident while in the course of his employment, and made an award. The Workmen's Compensation Board and the Court of Common Pleas affirmed. The employer and its insurance carrier have appealed. The factual situation appears in the following excerpt from the well-considered opinion of Judge ALEXANDER of the court below:

"Claimant was employed by defendant, Lit Brothers, a retail department store at Eighth and Market Streets, Philadelphia . . . as a porter or cleaner in the housekeeping department of the store. His working day was between 6 a.m. and 3 p.m. . . . His lunch hour was between 12 noon and 1 p.m. He was required to 'sign in' when he reported to work in the morning. At noon, he would 'sign out' for lunch with the housekeeping department and then 'sign in' with that department following the lunch hour.

"Employer operated an employees' cafeteria on the premises. Each morning, between 9 and 9:30 a.m., defendant announced the luncheon menu of the cafeteria over the store's public address system, including an announcement of the 'special' or featured lunch . . . The employees were encouraged by employer's advertising to use the facilities of the employees' cafeteria.

"A recreation room adjoined the cafeteria. This was furnished by employer with seating facilities, a television set and indoor games. The employees were free to use the recreation room as well as the cafeteria during lunch periods and were permitted to leave the building during lunch hour . . .

"The employees' cafeteria is on the second floor of a service building which is located to the rear of employer's main department store building. The service

building is connected to the main building by a bridge which spans Filbert Street. Filbert Street runs between the two buildings and lies to the rear or to the north of the main building.

"On the ground level of the service building are loading platforms which are used in loading merchandise into trucks for delivery. Adjacent to the service building and to the rear of the main building is an open space or yard, the entrance to which is on Arch Street. The yard is used for parking, loading and unloading trucks which deliver and supply employer's merchandise to and from the retail establishment. The yard is called the 'north yard' by defendant employer . . .

"The record establishes that defendant's employees used the north yard for various out-of-doors activities or 'games' throughout the year. This had been the practice for at least one year prior to the date of the accident, September 29, 1956. The activity on that date was 'touch' football which had been the 'seasonal' game during the lunch hour for several days before September 29, 1956. It was established that some of employer's management knew that the north yard was used for out-of-doors recreation by employees during their lunch hour and no objection had been made to those activities.

"The north yard was not opened to the general public. In fact, a guard stationed at the entrance to the yard on Arch Street was there for the purpose of limiting traffic to and from the yard to authorized vehicles and personnel. The guard had observed the recreation activity of the employees in the yard during lunch hour. He had never instructed them that they could not engage in such activities.

"The record further establishes that other employees frequently watched the games from the yard

and from windows of employer's buildings overlooking the yard.

"Claimant testified that on September 29, 1956, at noontime, he 'signed out' with his department and went to the employees' cafeteria. He ate his lunch and at about 12:10 p.m. he left the cafeteria and proceeded to the north yard by way of the stairway in the southeast corner of the cafeteria building. Upon reaching the north yard, he observed that a group of fellow employees were organizing a game of touch football. He requested to join the game and was 'picked' to play on one of the two 'teams'. There were about six or seven men on each team, making a total of twelve to fourteen participants in all. The 'scrimmage' line of the game was in a section of the yard in which delivery trucks were not standing. The football was of regulation size and was supplied by one of the employees who participated in the game.

"At this time, construction work was in progress in the yard. A new loading platform was being built and the vertical supports for the platform had been placed in the ground along the side of the cafeteria building. The supports were made of concrete and stood about eighteen to twenty-four inches above the surface of the yard.

"At one point in the game, claimant was running to catch a 'pass' thrown by another member of his team. He was looking back over his shoulder at the ball which was in flight, with his arms outstretched and he was running forward along the yard. Suddenly, he contacted one of the construction pillars. His forward momentum caused him to be thrown into the air, turn a 'summersault', and hit the ground on his neck, which, as a result was broken. He was carried to the dispensary located in the east service building and then taken to the Jefferson Hospital, Philadelphia . . .

"There is no dispute that claimant is permanently and totally disabled and will remain so for an indefinite period of time in the future. On December 24, 1956, he was transferred from the Jefferson Hospital to the West Roxbury, Massachusetts, Veterans Administration Hospital where he was a patient at the time of the instant hearings".

Appellant's first four contentions may be treated together. In sum, they raise the principal issue on this appeal, namely, whether claimant's injury is compensable. Appellant contends (1) that claimant had signed off from employment during the lunch hour, received no pay therefor, was free to do other personal things, and was not required to remain on the premises, or to do any act in connection with his work; (2) that claimant was not under the direction and control of the employer; (3) that his presence in the north yard was not required by the nature of his employment; and (4) that the evidence did not justify a finding that the employer provided and restricted the north yard for use by employees for athletic activities during the lunch hour.

The record clearly shows that the north yard was a part of the employer's premises. Appellant's contention is that the nature of claimant's employment did not require his presence there, and that claimant was engaged in a purely personal activity wholly foreign to his employment. It should be here noted that claimant was not violating any rule or regulation promulgated by his employer. Indeed, the testimony sustains the finding of the Referee that "the policy of the employer in providing low food prices in its employees' cafeteria, the furnishing of card-playing quarters, as well as a lot adjacent to the employer's premises for the use of employees athletic activity during the lunch break, all added up to an invitation by the employer

to the employees to devote all or part of the employees' lunch period in activities on property owned or controlled by the employer".

It is well settled that, in a workmen's compensation proceeding, whether claimant was injured in the course of his employment is a question of law: *Weiss v. Friedman's Hotel*, 176 Pa. Superior Ct. 98, 106 A. 2d 867; *Rybitski v. Lebowitz*, 175 Pa. Superior Ct. 265, 104 A. 2d 161; *Griffin v. Acme Coal Co.*, 161 Pa. Superior Ct. 28, 54 A. 2d 69. It would unduly prolong this opinion to discuss each of the many cases cited in the brief of appellant's able counsel. A like number is cited in the equally thorough brief for appellee. We have of course read them all, and will mention several of the more pertinent. Essentially, the principle established by our decisions is that the continuity of employment is not broken by engaging in play and recreation on the employer's premises during lunch hour.

An employe is entitled to compensation for every injury received on the premises of his employer during the hours of employment, regardless of whether he is actually required to be at the particular place where the injury occurred, so long as there is nothing to show that he had abandoned the course of his employment or was engaged in something wholly foreign thereto: *Adams v. Colonial Colliery Co.*, 104 Pa. Superior Ct. 187, 158 A. 183. If the employe was not required to be at the place of injury, his presence there must not amount to an abandonment of employment or constitute a departure wholly foreign to his usual work: *Hall v. Carnegie Institute of Technology*, 170 Pa. Superior Ct. 459, 87 A. 2d 87. It is not necessary that the employe be actually engaged in work at the time of the accident: *Dunphy v. Augustinian College of Villanova*, 129 Pa. Superior Ct. 262, 195 A. 782. An incident necessary to constitute a break in the course of

employment must be of pronounced character: *Haas v. Brotherhood of Transportation Workers,* 158 Pa. Superior Ct. 291, 44 A. 2d 776. We have held that an injury is compensable if received during a friendly wrestling match, *McCoy v. Spriggs,* 102 Pa. Superior Ct. 500, 157 A. 523, or boxing bout: *Sinko v. Bethlehem Steel Co.,* 104 Pa. Superior Ct. 357, 159 A. 230.

In *Oldinsky v. P. & R. C. & I. Co.,* 92 Pa. Superior Ct. 328, claimant's decedent was employed as a slate picker. At the lunch hour he was standing on a platform watching other employees playing ball. He jumped into a coal chute to take a slide. As he did so, someone drew coal and he was suffocated. Judge (later President Judge) KELLER made the following pertinent statement: "While the case is near the border line we think . . . that what the boy was doing on his employer's premises during the lunch intermission was not such an act as compelled a finding that he was engaged in something wholly foreign to his employment". There are at least two lower court cases directly in point. In *Green v. East Bear Ridge Coal Co.,* 28 Schuylkill L. R. 367, compensation was allowed where a claimant was injured during the lunch hour while he was engaged with his fellow employes in a game of football. Similarly, in *Wolford v. Reading Dye Works,* 29 Pa. Dist. 514, compensation was allowed to a claimant who was injured during lunch hour while playing tag with other employes. We have concluded that the decision of the compensation authorities in the case at bar should not be disturbed.

Appellant's fifth and final contention concerns the award of $2,417.75 to the Veterans' Administration Hospital, West Roxbury, Massachusetts, for medical and hospital expense. In this connection we adopt the following language from the opinion of Commissioner Noonan for the Workmen's Compensation Board:

"The defendant argues that the care received by the claimant at the Veterans Hospital does not come within the scope of Section 306(f) of the Act [77 P.S. 531] for the reason, as alleged, that claimant received only domiciliary care. The evidence to the contrary shows that the claimant, during his stay at the Veterans Hospital, had surgery performed for the removal of stones from his bladder and treatment for ulcers on his back. It also shows that special operations were performed on him, such as spinal taps. A representative of the Veterans Hospital established that a split thickness graft to the claimant's sacrum on January 18, 1957, was performed. Also that numerous laboratory tests and x-rays were required.

"Our review of the testimony leads us to conclude that the claimant's hospitalization at the Veterans Hospital is required by the injuries he received in this accident. Although some of the services may be declared domiciliary, these are merely incidental to the main reason for his stay at that hospital, i.e., that he receive proper medical attention during his disability".

The appeal is dismissed, and the record is remitted to the court below for the entry of a judgment in favor of the claimant. As so entered, the judgment is affirmed. See *Spry v. Polt,* 186 Pa. Superior Ct. 326, 142 A. 2d 484.