660 A.2d 600

Debbie S. WASSERMAN

v.

**FIFTH & REED HOSPITAL d/b/a Mount Sinai Hospital, Appellant (Two Cases).**

Superior Court of Pennsylvania.

Argued March 8, 1995.

Filed June 7, 1995.

564

566

Barbara S. Magen, Philadelphia, for appellant.

Blake Berenbaum, Philadelphia, for appellee.

Before DEL SOLE, FORD ELLIOTT and CERCONE, JJ.

CERCONE, Judge:

This is a consolidated appeal from a final judgment entered March 17, 1994 which appellant has improperly characterized as an appeal from two post verdict orders. We affirm.

Appellee Debbie S. Wasserman was employed by appellant Fifth and Reed Hospital, Inc. d/b/a Mount Sinai Hospital ("hospital") as a social worker. Her duties included arranging patient discharges. The hospital required Ms. Wasserman to work a seven and one-half hour day and allotted her a one-half hour lunch break. Ms. Wasserman punched a time clock at the beginning and end of each work day but not at lunch.

On May 10, 1989, Ms. Wasserman went to lunch with a friend at 1:00 p.m. They chose to eat at a cafeteria operated by the hospital and located within the hospital's building. Appellee made a salad at the salad bar and, using a container labeled "vinegar," dressed it with a clear liquid. After ingesting the salad, Ms. Wasserman felt a burning sensation in her mouth and throat. She was rushed to the hospital's emergency room, treated and released to return to work an hour later. Subsequent chemical analysis revealed that the container labeled "vinegar" had actually been filled with an oven cleaning solution composed of sodium and potassium hydroxide (commonly known as lye).

Appellee filed a common law tort action against the hospital seeking to recover for the resulting injuries. During trial, the hospital unsuccessfully motioned for nonsuit, arguing that the exclusivity clause of the Workers' Compensation Act [1] barred the tort action of an employee injured during the course of employment. At the close of testimony, the hospital restated its position to no avail in a motion for directed verdict. The jury awarded appellee $125,000.00 in damages. The lower court denied post-trial motions and judgment was entered on March 16, 1994.

In this timely appeal, appellant presents the following issues for our consideration:

I. DID THE TRIAL COURT ERR IN DENYING DEFENDANT'S MOTION FOR POST–TRIAL RELIEF SINCE THE VERDICT WAS IMPROPER AND AGAINST THE WEIGHT OF THE EVIDENCE AS PLAINTIFF'S ENTIRE CLAIM AGAINST DEFENDANT IS BARRED PURSUANT TO THE IMMUNITY AND EXCLUSIVITY PROVISIONS OF PENNSYLVANIA WORKMEN'S COMPENSATION ACT?

II. DID THE TRIAL COURT ERR IN DENYING DEFENDANT'S MOTION FOR POST–TRIAL RELIEF SINCE THE LOWER COURT ERRED IN ALLOWING PLAINTIFF'S TREATING PHYSICIAN, DR. LOWELL MEYERSON, TO TESTIFY ON THE ISSUE OF CAUSATION SINCE DR. MEYERSON WAS ONLY ABLE TO STATE THAT THE ALLEGED NEGLIGENT CONDUCT "COULD HAVE" CAUSED PLAINTIFF'S INJURY?

III. DID THE TRIAL COURT ERR IN DENYING DEFENDANT'S MOTION FOR POST–TRIAL RELIEF SINCE THE LOWER COURT ERRED IN ALLOWING PLAINTIFF'S EXPERT WITNESS, DR. GORDON BENDERSKY, TO PROVIDE TESTIMONY WHICH LACKED AN ADEQUATE FACTUAL BASIS?

IV. DID THE TRIAL COURT ERR IN DENYING DEFENDANT'S MOTION FOR POST–TRIAL RELIEF

1. 77 P.S. § 1 *et seq.*

SINCE THE LOWER COURT ERRED IN ALLOWING PLAINTIFF TO TESTIFY CONCERNING STATEMENTS ALLEGEDLY MADE TO HER BY HER TREATING PHYSICIAN DESPITE THE FACT THAT THIS TESTIMONY CONSTITUTED INADMISSIBLE HEARSAY AND ALLOWED PLAINTIFF TO PROVIDE EXPERT MEDICAL TESTIMONY ON HER BEHALF?

V. DID THE TRIAL COURT ERR IN FAILING TO GRANT A NEW TRIAL OR REMITTITUR DESPITE THE FACT THAT THE VERDICT WAS UNDULY EXCESSIVE?

Brief of Appellant at 3. We shall address each issue in the order presented.

 We begin by considering appellant's contention that, because the hospital was immune from the tort action of its employee, a judgment n.o.v. was proper.[2] In reviewing an order denying a motion for judgment n.o.v., we must consider the evidence "in the light most favorable to the verdict winner, and he must be given the benefit of every reasonable inference of fact arising therefrom, and any conflict in the evidence must be resolved in his favor." *Moure v. Raeuchle*, 529 Pa. 394, 402, 604 A.2d 1003, 1007 (1992). A judgment n.o.v. is proper if the movant is entitled to judgment as a matter of law or if the evidence was such that no two reasonable minds could disagree that the verdict was improper. *Id.*

 As part of the quid pro quo of the Workers' Compensation Act (the "Act"), an employee surrenders the right to sue an employer in tort for injuries received in the course of employment to obtain the benefit of strict liability. 77 P.S. § 481(a). If an injury is compensable under the Act, the compensation provided by that Act is the employee's exclusive remedy. *See Lewis v. School District of Philadelphia*, 517 Pa. 461, 470, 538 A.2d 862, 867 (1988). *See also Ducjai v. Tarvin*, 540 Pa. 103, 656 A.2d 102 (1995) (discussing exclusivity provi-

2. In its Memorandum Opinion and Order dated 3/28/94, the lower court confined its discussion to the hospital's amenability to a common law tort action.

sions of the Act). A compensable injury includes "any injury to an employee, regardless of his previous physical condition, arising in the course of his employment and related thereto, and such disease or infection as naturally results from the injury or is aggravated, reactivated or accelerated by the injury." 77 P.S. 411(1). Whether a claimant is acting within the course and scope of employment at the time of injury so as to fall within the Act's coverage is a question of law to be determined on the basis of findings of fact. *Vosburg v. Connolly*, 405 Pa.Super. 121, 125, 591 A.2d 1128, 1130–31 (1991). An injury arising in the course of employment

shall not include an injury caused by an act of a third person intended to injure the employe because of reasons personal to him, and not directed against him as an employe or because of his employment; but shall include all other injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere, and shall include all injuries caused by the condition of the premises or by the operation of the employer's business or affairs thereon, sustained by the employe, who, though not so engaged, is injured upon the premises occupied by or under the control of the employer, or upon which the employer's business or affairs are being carried on, the employe's presence thereon being required by the nature of his employment.

77 P.S. § 411(1). Consequently, the Act distinguishes between two categories of injuries: "injuries that are sustained while the employee is actually engaged in the furtherance of the business of the employer, regardless of the physical location of the injury.... and injuries occurring on the premises of the employer." *Tatrai v. Presbyterian University Hospital*, 497 Pa. 247, 251, 439 A.2d 1162, 1164 (1982) (citations omitted).

■■■ To determine whether an employee was acting in furtherance of the business of the employer, courts consider the nature of the employment and conduct a case specific inquiry. A traveling employee is entitled to a broader definition of the course of employment. As such, a traveling

employee who is injured during a necessary or authorized break is presumed to be engaged in the furtherance of the employer's business. *Maher v. Hallmark Cards, Inc.,* 207 Pa.Super. 472, 218 A.2d 593 (1966). Appellee in this case is a stationary employee, *i.e.,* one who works primarily at the business site. Consequently, the phrase "course of employment" will be narrowly interpreted:

[d]espite the fact that such a phrase could be given a very broad reading, a review of certain cases makes clear that this requirement means a direct or immediate furtherance of the business affairs of the employer. A mere indirect or incidental benefit to the employer is insufficient.

*Carretti v. Schwanger,* 404 Pa.Super. 51, 55, 589 A.2d 1165, 1167, 1169 (1991), *appeal denied* 529 Pa. 615, 600 A.2d 532 (1991).

In *Tatrai,* a hospital employee became ill during working hours and was directed by her supervisor to the emergency room for treatment. While in the emergency room, the employee was injured when the x-ray table on which she was reclining collapsed. *Tatrai,* 497 Pa. at 249, 439 A.2d at 1163. As in this case, the hospital argued that it was immune from a tort action because the injury arose in the course of employment. Our Supreme Court found that, at the time of the injury, the employee was not actually engaged in the furtherance of her employer's affairs:

We find it to be a tenuous proposition to argue that the indirect benefit to the employer of a healthy employee satisfies the statutory requirement of being actually engaged in the furtherance of the employer's business. It would ignore reality to deny the fact that the employee's purpose in seeking medical aid was primarily for her own benefit. While the maintenance of good health is of course of incidental value to the employer, the primary beneficiary is the employee whose well being is served.

*Id.* at 252, 439 A.2d at 1164.

In this case, appellant contends that the practice of its employees in taking their lunch breaks in the cafeteria inured to the direct benefit of the hospital:

The cafeteria in the Hospital was there primarily for the convenience of the Mt. Sinai staff and undeniably benefited both the employees as well as defendant; during meals, fellow employees could fraternize and discuss Hospital matters. In this vein, there can be no doubt that the cafeteria provided a social function which was also business-related.... could reduce stress.... Likewise, the quicker the employees ate, the more rapidly they could return to their jobs. Also, providing the staff with the opportunity to remain on the premises during meals made them more available to the Hospital....

This desire for easy access and communication is undoubtedly why there was a loudspeaker in the cafeteria as well as 'house telephones.'

Reply Brief of Appellant at 2. *But see Carretti,* 404 Pa.Super. at 55, 589 A.2d at 1167 (generally, employees are on their own time during lunch and an off-premises injury during such time is not one sustained in the course of employment). The record does not support hospital's contention. Ms. Wasserman was not an "on-call" employee. N.T., 4/13/93, at 51. *See Barrick v. Pocono Highland Camp,* 208 Pa.Super. 72, 74, 220 A.2d 662, 664–65 (1966) (although employee lived on employer's premises, he was not required to be on premises, was not on call, and was not engaged in his duties at the time of the injury; therefore, employee's injuries were not deemed to have arisen in the course of employment). Although the hospital required its employees to wear beepers when on duty, it was appellee's practice to remove the beeper and lock it in her desk before going to lunch. Unlike doctors, residents and interns, social workers are not constrained by the exigencies of the job to remain available at an instant's notice. In fact, Ms. Wasserman had never been called away from lunch by a supervisor either personally or by page. Nor was she required to advise her office of where she could be reached during lunch. N.T., 4/13/93, at 84, 103.

Personal convenience dictated appellee's choice of eating establishments. Although Ms. Wasserman ate lunch in the hospital cafeteria a majority of the time, she was at liberty to,

and occasionally did, leave the premises for lunch. At times, she packed a lunch. The cafeteria was operated by the hospital but not restricted to hospital personnel. To the contrary, because the meals were reasonably priced, members of the community routinely ate in the cafeteria. Hospital employees were not entitled to special discounts. Ms. Wasserman, like any other patron, was required to pay full price for her meals. Consequently, we find that Ms. Wasserman's act of eating lunch in the hospital cafeteria did not directly benefit her employer. *Compare Speight v. Burens,* 371 Pa.Super. 478, 538 A.2d 542 (1988) (employee went to lunch with his employer to discuss work projects; injuries sustained in motor vehicle accident on return from lunch were covered by the Workers' Compensation Act). Because appellee was not actually furthering the hospital's business at the time of the injury, the injury does not fall within the first category of "an injury in the course of employment."

■ We now turn to the second category of injuries arising in the course of employment. Specifically, we must determine whether appellant is immune from an employee's tort suit because the incident occurred on the hospital's premises and was caused by the hospital's negligence.[3] An employee who is injured on the employer's premises while not engaged in the furtherance of the business or affairs of the employer must satisfy three conditions in order for the injury to be compensable under the Act:

> It must be shown that the injury was caused by the condition of the premises or by the operation of the employer's business; that the injured employee, though not so engaged, was in fact injured upon the employer's premises; and the employee's presence thereon was required by the nature of the employment.

*Tatrai,* 497 Pa. at 253, 439 A.2d at 1165. The controverted question is whether Ms. Wasserman's presence was required by the nature of her employment.

---

**3.** The parties have stipulated that the injury occurred on the hospital's premises. N.T., 4/13/93, at 99. Likewise, they do not dispute that the hospital's negligence resulted in the placement of oven cleaner solution in the vinegar container. N.T., 4/14/93, at 113.

■ An employee is covered by the Act if it is "clear that the [employee's] presence on the facility of the employer was required under the terms of employment and/or facilitated the orderly and expeditious disposition of the employer's affairs." *Id.* at 254, 439 A.2d at 1166. For example, in *Tatrai,* the employee was in her employer's emergency room not to promote the orderly and expeditious disposition of the hospital's affairs, but rather to seek treatment. The employee's presence upon the premises at the time of the injury was only a fortuitous circumstance:

> [Ms. Tatrai] went to the hospital emergency room which was open to members of the general public. The sole reason appellant went to the emergency room was for treatment of her illness. Upon her arrival to the emergency facility, Ms. Tatrai was treated as a paying patient and like any other member of the general public. Since Ms. Tatrai's presence in the emergency room was not in furtherance of the affairs of her employer and was not required by reason of her employment, we must conclude that Workmen's Compensation is not her exclusive remedy. There is no reason to distinguish appellant from any other member of the public injured during the course of treatment. The risk of injury which appellant suffered was a risk to which any member of the general public receiving like treatment would have been subjected. The occurrence of the injury was not made more likely by the fact of her employment.

*Id.* at 255, 439 A.2d at 1166.

According to our Supreme Court, "the controlling factor [in *Tatrai* ] was that the employee went to and was injured in the public emergency room which served the general public. Thus, there was no basis for distinguishing [Ms. Tatrai] from any other member of the public injured during the course of treatment." *Budzichowski v. Bell Telephone Company of Pennsylvania,* 503 Pa. 160, 167–168, 469 A.2d 111, 114–115 (1983). In *Budzichowski,* an employee was injured while on the job and negligently treated by staff doctors who were working in the employer's medical dispensary, a facility not open to the general public. Limiting the employee to recov-

ery under the Act, the Court stressed: "The treatment received by [employee] at the [employer's] dispensary was not available to the general public and would not have been available to the [employee] but for his employment relationship with [employer]." *Id.* Applying this rationale, a panel of this court recently denied tort recovery to a hospital employee who, after contracting tuberculosis, received negligent treatment and monitoring in a program available only to employees. *Snyder v. Pocono Medical Center,* 440 Pa.Super. 606, 656 A.2d 534 (1995). The hospital had established the employee health program to further its own special interest in curtailing the spread of contagious diseases, not to confer independent benefits on its employees. *Id.* Because the employee's presence was therefore necessary to further the employer's business interests, the injuries arose in the course of employment and were covered by the Act. *Id.*

In this case, Ms. Wasserman ate in a cafeteria open to the public not to further her employer's interests but to accommodate her own. As we have already noted, appellee was free to leave the hospital during her lunch break. Moreover, she was not an "on-call" employee. Ms. Wasserman had never been paged or interrupted by business concerns during her lunch break. As such, there is no reason to distinguish appellee from any other member of the public so injured.[4] Accordingly, we agree that the exclusivity provision of the Workers' Compensation Act does not bar this employee's tort suit. Judgement n.o.v. was properly denied.

 Appellant further asserts that the trial court committed several errors which mandate the award of a new trial. A

---

**4.** Our court's decision in *Henry v. Lit Brothers,* 193 Pa.Super. 543, 165 A.2d 406 (1960) does not mandate a contrary result. The employer in *Henry* operated an employee cafeteria on the business premises and actively encouraged employee patronage. Employer also provided recreational facilities and allowed employees to use an outdoor yard for recreational purposes. An employee, after eating in the employees' cafeteria, was injured while playing football in the yard. As in *Snyder, supra.,* neither the cafeteria nor the yard were open to the general public; rather, both were restricted to employee use. The court found that the employee was covered by the Act. *Id.* at 548–49, 165 A.2d at 409–10.

lower court's denial of a motion for new trial will not be reversed on appeal absent either an error of law which controlled the outcome of the case or a comparable abuse of discretion when the ruling turns on the weight of the evidence. *Simmons v. St. Clair Memorial Hospital,* 332 Pa.Super. 444, 481 A.2d 870 (1984). After reviewing the record, we find each of appellant's claims of error to be without merit. As such, we conclude that appellant's motions for new trial were properly denied.

According to appellant, the lower court erred in allowing Dr. Lowell Meyerson to testify on the issue of causation. The record discloses that appellee did not rely on the testimony of Dr. Meyerson, appellant's expert witness, to establish causation. Instead, appellant presented her own expert, Dr. Gordon Bendersky. Dr. Bendersky opined, with a reasonable degree of medical certainty, that Ms. Wasserman's injuries resulted from the ingestion of oven cleaning solution. Notes of Deposition, hereinafter N.D., 4/5/93, at 32. *See Cohen v. Albert Einstein Medical Center,* 405 Pa.Super. 392, 592 A.2d 720 (1991), *appeal denied* 529 Pa. 644, 602 A.2d 855 (1992) (expert must express his opinion within a reasonable degree of medical certainty).

Likewise, appellant maintains that because Dr. Bendersky lacked an adequate factual basis for his opinions, the lower court erred in admitting his testimony as to appellee's injuries. An expert's opinion may be based on facts of which he or she has no personal knowledge if those facts are supported by evidence in the record. *Collins v. Hand,* 431 Pa. 378, 390, 246 A.2d 398, 404 (1968). Moreover, our Supreme Court has adopted a "limited" exception to this rule: "medical witnesses [are permitted] to express opinion testimony on medical matters based, in part, upon reports of others which are not in evidence, but which the expert customarily relies upon in the practice of his profession." *Commonwealth v. Thomas,* 444 Pa. 436, 445, 282 A.2d 693, 698 (1971). In addition, an expert may properly base an opinion on assumed facts which are supported by evidence in the record and conveyed in the form of a hypothetical question. *See Hussey*

*v. May Department Stores, Inc.,* 238 Pa.Super. 431, 357 A.2d 635 (1976).

█ In this case, Dr. Bendersky based his expert opinion on a review of the medical records, on his particular knowledge, training and experience, and on hypotheticals. N.D., 4/5/93, at 13, 33, 58–59. The medical records were admitted into evidence and were characterized as the type of records upon which an expert would reasonably rely in reaching a conclusion. N.D., 4/5/93, at 13–14. Accordingly, we find that the lower court properly admitted Dr. Bendersky's expert testimony.

█ We now consider whether the trial court erred in allowing appellee to relate Dr. Meyerson's comments to the effect that ulcerative colitis created an increased risk of colon cancer. Ms. Wasserman had suffered from ulcerative colitis in the past. During the five years immediately preceding the incident, however, the condition lay dormant. Both experts agreed that stress is one cause of the resurgence of ulcerative colitis. N.D., 3/24/93, at 12; N.D., 4/5/93, at 28. According to Dr. Meyerson, the combination of a family history of cancer and chronic ulcerative colitis created in Ms. Wasserman a higher risk of developing colon cancer. For that reason, he ordered a colonoscopy. N.D., 3/24/93, at 55. The level of stress engendered by a fear of cancer, regardless of the rationality of that fear, was relevant to the patient's condition. Before allowing Ms. Wasserman to express the fear created by Dr. Meyerson's supposition, the court cautioned the jury that the statements being offered, not for their truth, but for their effect on appellee. N.T., 4/14/93, at 49–50. *See Spotts v. Reidell,* 345 Pa.Super. 37, 48, 497 A.2d 630, 636 (1985) (recognizing the efficacy of curative instructions to limit the use of hearsay testimony as reflecting appellee's state of mind). Because we agree that appellee offered testimony relating to this out-of-court conversation, not to prove the truth of the matter asserted, but to prove appellee's state of mind, we find that it was properly admitted.

In its final claim, appellant argues that the jury's award of $125,000.00 was excessive and necessitates a new trial or, in the alternative, remittitur. The assessment of damages is peculiarly within the province of the jury, and the jury's award will not be set aside on appeal unless it is so excessive as to shock the conscience of the court or unless it is clearly based on partiality, prejudice or passion. *Krysmalski by Krysmalski v. Tarasovich*, 424 Pa.Super. 121, 147, 622 A.2d 298, 311–312 (*en banc*), *appeal denied*, 535 Pa. 675, 636 A.2d 634 (1993). *See also Geyer v. Steinbronn*, 351 Pa.Super. 536, 506 A.2d 901 (1986) (the trial court did not abuse its discretion in refusing to set aside or reduce the award of damages when there was no support for a finding that the jury misapprehended or disregarded the evidence and when there was evidence from which the jury could have found that the defendant's actions precipitated a worsening of plaintiff's alcoholism which sent his personal life into a tailspin and caused his marriage to deteriorate). Similarly, the grant or refusal of either a new trial or remittitur because of the excessiveness of the verdict is within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion or error of law. *Krysmalski, supra.*

During this trial, evidence was adduced from which the jury could have found that the ingestion of oven cleaning solution culminated in the exacerbation of ulcerative colitis, a condition which had lain dormant for five years. The jury was free to compare the testimony of Dr. Bendersky, Dr. Meyerson, and Ms. Wasserman in reaching its conclusion. By awarding a verdict in favor of appellee, the jury demonstrated that it had accepted as credible her graphic descriptions of the deleterious impact of the affliction on her physical and social well-being. The lower court agreed that Ms. Wasserman was "a thoroughly credible witness." Trial Court Opinion dated 3/28/94 at 12. On appeal, the Superior Court is not free to substitute its judgment for that of the finder of fact. *Botek v. Mine Safety Appliance Corp.*, 531 Pa. 160, 166, 611 A.2d 1174, 1176 (1992). We conclude, therefore, that the trial court did not abuse its discretion in refusing to set aside or reduce an

award of damages which was not so grossly excessive as to shock this court's sense of justice.

Judgment affirmed.

DEL SOLE, J., files a concurring statement.

DEL SOLE, Judge, concurring.

I join the Opinion authored by Judge Cercone. I write to emphasize that appellee did not receive wages while taking her lunch break. At a minimum, if an employer seeks to claim that an injury to an employee is compensable, the employee should be receiving wages at the time of the occurrence. See 4/13/93 R.R. at 69A.