**Bakeoven v. Segal**

420

*Gilbert G. Spencer Jr.,* for plaintiff.
*Michael E. McGilvery,* for defendants.

FIELD, *J.,* March 21, 2000—Defendants, Michael Segal D.O., Michael Segal D.O. P.C. and Revere Street Medical Associates, appeal from this court's order of January 24, 2000, denying their motion for post-trial re-

lief. For the reasons which follow, the post-trial motion was properly denied, and judgment entered on February 9, 2000 in the amount of $6,768,073.06 should be affirmed.

A jury trial commenced on May 10, 1999. The following facts were established. At the time of his death the decedent, James Bakeoven, was 49 years old, married and had three children, ages 21, 17 and 14. He had a history of epilepsy dating back at least since the early 1970s. After approximately 20 years without a seizure, Mr. Bakeoven had a severe recurrence in March of 1993 while driving his car. Shortly thereafter, Mr. Bakeoven consulted a neurologist, Dr. Arenas, who prescribed Dilantin. Mr. Bakeoven continued to take the same dosage of Dilantin, four pills per day, until April 1996, when, under the care of Dr. Segal, his dosage was reduced to three pills per day. About three months after the dosage reduction, Mr. Bakeoven suffered a fatal series of seizures.

On May 14, 1999, the jury returned a verdict in favor of the plaintiff in the amount of $5,054,000 under the Wrongful Death Act and $837,000 under the Survival Act. Following the conclusion of the trial, plaintiff filed a motion for delay damages pursuant to Rule 238 of the Pennsylvania Rules of Civil Procedure, which was granted. The verdict was molded to $6,768,073.06. Defendant filed a post-trial motion raising five issues: (1) The trial court improperly denied defendant's motion for a mistrial; (2) improper lay opinion was allowed into evidence; (3) improper expert opinion on the standard of care was introduced; (4) defendant's expert witness was improperly restricted; and (5) the verdict was excessive. For the reasons which follow, none of these ar-

guments are persuasive. Hence, the motion was properly denied. The defendant's arguments will be discussed in turn.

## 1. MOTION FOR MISTRIAL WAS PROPERLY DENIED

Defendant moved for a mistrial based on Mary Bakeoven's testimony that her husband took four pills of Dilantin per day and would have to do so for the rest of his life. (N.T. May 11, 1999, at 156.) Immediately after she made that statement, defense counsel objected. A sidebar conference was held, after which the jury was immediately instructed to disregard Mrs. Bakeoven's statement. (N.T. May 11, 1999, at 166.) Plaintiff's counsel then questioned Mrs. Bakeoven about things of which she had personal knowledge. Mrs. Bakeoven testified that it was she who would refill her husband's prescriptions at the pharmacy and it was she who dispensed his medication, two pills with his breakfast and two pills with his dinner daily. (N.T. May 11, 1999, at 167-68.) Throughout the course of the trial, other evidence was introduced through medical witnesses as to Mr. Bakeoven's prescribed dosage of Dilantin. One expert witness, Sheldon Margulies M.D., went so far as to opine as to the duration of the decedent's need for continued high dosages of the drug. (N.T. May 12, 1999, at 25-33.)

Defendant argues that even though his objection was sustained and a curative instruction was given, a mistrial was necessary because the jury may have based its verdict on improperly admitted evidence. Initially, we note that the disposition of a motion for mistrial is a matter committed to the sound discretion of the trial court. *Livelsberger v. Kreider,* 743 A.2d 494 (Pa. Super. 1999).

Moreover, a curative instruction given promptly is presumed to solve the problem of improperly introduced evidence, except in very limited circumstances. *Commonwealth v. Smith,* 414 Pa. Super. 208, 606 A.2d 939 (1992), *appeal denied,* 533 Pa. 624, 620 A.2d 490 (1993). Where, as here, the evidence improperly introduced is cumulative of property admitted evidence, any possible error is harmless, and a new trial is not warranted.

## 2. LAY OPINION WAS PROPERLY ADMITTED

Defendant next claims that a new trial is warranted because Mrs. Bakeoven was permitted to testify concerning the impact of Mr. Bakeoven's death on their youngest child. Defendant objects to the testimony as inadmissible lay opinion. This argument is without merit. First, much of Mrs. Bakeoven's testimony was factual: how her son acted before his father's death and how he has acted since. Second, as his mother, and someone who was able to observe him on a daily basis, Mrs. Bakeoven was allowed to state her own conclusions. Rule 701 of the Pennsylvania Rules of Evidence states that lay opinions or inferences are permissible provided they are "rationally based on the perception of the witness and helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Mrs. Bakeoven's testimony falls squarely within Rule 701. Thus, a new trial is not warranted.

## 3. EXPERT OPINION ON THE STANDARD OF CARE WAS PROPERLY ALLOWED

Defendant's third argument is that Dr. Margulies should not have been allowed to testify as to the standard of care for family practice physicians such as Dr.

Segal, because he is not himself a specialist in family practice. The standard for expert testimony in Pennsylvania is very liberal; so long as a witness has a reasonable pretension to specialized knowledge, she or he may testify as an expert. *Montgomery v. South Philadelphia Medical Group Inc.,* 441 Pa. Super. 146, 152, 656 A.2d 1385, 1388 (1995), *appeal denied,* 542 Pa. 648, 666 A.2d 1057 (1995); Pa.R.E. 702. The weight to be given to the witness' testimony is for the trier of fact to decide. *Id.* Here, Dr. Margulies testified that he was board certified in neurology, having first been fully trained in the field of internal medicine. Although admittedly not a specialist in the field of family practice, his training as an internist gave him the necessary general practice knowledge.

Under Pennsylvania law, Dr. Margulies was sufficiently qualified to offer an expert opinion. It was also clearly permissible for defense counsel to cross-examine him on his qualifications and to argue to the jury that his testimony was not entitled to great weight, both of which were done. A new trial is not warranted on this basis, either.

## 4. DEFENDANT'S EXPERT WITNESS WAS PROPERLY RESTRICTED

Defendant's fourth argument rests on his assertion that the testimony of his own expert witness, Richard I. Katz M.D., was improperly limited. Rule 4003.5(c) of the Pennsylvania Rules of Civil Procedure specifically states that the direct testimony of an expert at trial may not go beyond the fair scope of his or her testimony as set forth in his or her expert report. In the instant matter, Dr. Katz's report discusses Dr. Segal's treatment of Mr. Bakeoven, and the soundness of his decision to reduce Mr.

Bakeoven's Dilantin dosage. At trial questions on that topic were allowed. Only when defense counsel sought to elicit testimony as to the half-life of the medication, *i.e.,* the rate at which it breaks down in the body, did plaintiff's counsel object. Previously, on cross-examination of Dr. Margulies, defense counsel sought to introduce the possibility that Mr. Bakeoven reduced his own dosage by not taking the prescribed amount. Dr. Margulies rejected that notion. There is no mention in Dr. Katz's report of the possibility that Mr. Bakeoven may have purposely taken less than his prescribed dosage. Any questions relating to this theory were clearly beyond the four corners of Dr. Katz's report, since Dr. Katz not only acknowledged Dr. Segal's reduction of Mr. Bakeoven's dosage, but approved of same. The testimony was property limited.

## 5. THE VERDICT WAS NOT EXCESSIVE

Finally, Dr. Segal seeks remittitur, arguing that the verdict was excessive. "The assessment of damages is peculiarly within the province of the jury, and the jury's award will not be set aside . . . unless it is so excessive as to shock the conscience of the court or unless it is clearly based on partiality, prejudice or passion." *Wasserman v. Fifth & Reed Hospital,* 442 Pa. Super. 563, 578, 660 A.2d 600, 607 (1995), and cases cited therein. Here, the jury heard testimony from Mrs. Bakeoven about how the death of her husband, a father of three who was only in his 40s, had a devastating effect on her family, and especially on her adolescent son. Under these circumstances, the award, though generous, did not shock the conscience of this court. Therefore, it was not reduced.

For all of the foregoing reasons, the defendant's post-trial motion was property denied, and judgment as entered on February 9, 2000, in the amount of $6,768,073.06 should be affirmed.