**Walter WETZEL, deceased, c/o Walter Wetzel III, Petitioner**

**v.**

**WORKERS' COMPENSATION APPEAL BOARD (PARKWAY SERVICE STATION), Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 22, 2014.
Decided May 27, 2014.

John W. Brown, Pittsburgh, for petitioner.

Templeton Smith, Jr., Pittsburgh, for respondent Parkway Service Station.

BEFORE: COHN JUBELIRER, Judge, and LEAVITT, Judge, and COLINS, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

Walter Wetzel, deceased, c/o Walter Wetzel III (Claimant) petitions for review of an Order of the Workers' Compensation Appeal Board (Board) reversing a Decision of the Workers' Compensation Judge (WCJ) granting a Claim Petition filed on behalf of Walter Wetzel (Decedent), now deceased.[1] On appeal, Claimant argues that the Board erroneously concluded that Decedent abandoned his employment and was not furthering the business affairs of Parkway Service Station (Employer) when Decedent was injured while attempting to

---

1. A fatal claim petition was not filed because Decedent was unmarried at the time of his injury and had no dependent children. (Board Op. at 1 n. 1.)

stop a thief from leaving Employer's premises after an attempted robbery of Employer's store. Given the facts, as found by the WCJ, we agree that the Board erred; therefore, we reverse.

Decedent was employed by Employer as a management employee at Employer's store. (WCJ's Decision, Findings of Fact (FOF) ¶ 40.) Decedent filed a Claim Petition on January 4, 2010 alleging that, as a result of being struck by a vehicle on November 28, 2009, he sustained a work-related severe traumatic brain injury, which rendered him comatose and permanently disabled and incapacitated. (FOF ¶ 1.) Employer denied that Decedent's injuries were sustained in the course and scope of his employment and alleged that Decedent's injuries were the result of a violation of a positive work order. (FOF ¶¶ 2–3.) Decedent died on April 2, 2010 and a Modification and Review petition was filed on behalf of Decedent asserting a claim for burial and medical expenses. (FOF ¶ 4.) Employer denied that Decedent's death was causally related to his employment or that his death was the result of injuries sustained while he was acting in the course and scope of his employment. (FOF ¶ 5.) The petitions were consolidated and hearings ensued before the WCJ.

The parties stipulated that Decedent was struck by a vehicle on November 28, 2009 at approximately 8:01 p.m., while on Employer's premises. (Board Op. at 1.) The issues before the WCJ were whether Decedent violated a positive work rule by possessing a gun on Employer's premises and whether he was in the course and scope of his employment when he was struck and severely injured by a vehicle while trying to stop a fleeing individual who had attempted to rob Employer's store. In support of the Claim Petition, Decedent presented the testimony of a medical expert and three co-workers, Lucinda Wolff, Howard Todd, and Otha Alexander. In opposition, Employer presented the testimony of: (1) Garfield B. Smith, Employer's daytime manager; (2) Anthony J. Mazzarini, Jr., Employer's general manager; and (3) Devin M. Rankin, a customer who witnessed the events of November 28, 2009.

With regard to the issue of whether Decedent violated a positive work rule by possessing a gun while on Employer's premises, the facts, as found by the WCJ, and the testimony, as recited by the Board, are as follows. Wolff testified that: (1) there were many robbery attempts and attacks on employees over the years; (2) Decedent and other employees, including Mazzarini, always carried a gun while working and that no one ever told Decedent not to carry a weapon; and (3) Decedent used a firearm in 2007 to stop an attempted robbery of Employer's store. (FOF ¶¶ 16(b), 36.)

Todd testified that: (1) Mazzarini and Decedent both carried guns at work and that Employer knew that Decedent carried a gun; (2) there was no policy against employees carrying guns and that he had never received an employee handbook during the 27 years he worked for Employer; and (3) Decedent shot a robber during a robbery attempt in 2007 and continued to carry a gun after that incident. (FOF ¶ 17(c)-(e).) Alexander testified that he was never given an employee handbook and that both Decedent and Mazzarini carried guns to work. (FOF ¶ 18(b).)

Smith testified that: (1) Decedent always carried a gun to work beginning in the 1990s; (2) Mazzarini was aware that Decedent carried a gun; and (3) Decedent was not fired after the 2007 incident during which he shot the robber. (FOF ¶¶ 19(b), (c).) Mazzarini testified that Decedent was not disciplined after he shot

the would-be robber in 2007 and that the robber was also armed. (FOF ¶ 20(h).) Mazzarini testified that he was not aware that Decedent carried a gun after the 2007 incident. (FOF ¶ 20(*l*).) Mazzarini testified that he has a permit to carry a concealed weapon for transporting money. (FOF ¶ 20(p)(3).) Mazzarini testified that employees were not given a copy of the employee handbook that prohibits employees from carrying handguns, but it was available at the worksite. (FOF ¶¶ 20(j), (o).)

With regard to the issue of whether Decedent was acting within the course and scope of his employment on November 28, 2009, the facts, as found by the WCJ, and the testimony, as recited by the Board, are as follows. Decedent was scheduled to work the night shift at Employer's premises on November 28, 2009; however, he went in early, with his work shirt on, in response to a phone call from Wolff, who needed help correcting a mistake on the cash register. (FOF ¶ 16(d).) After adjusting the cash register, Decedent remained on Employer's premises to stock the cooler and check supplies before he began his regular shift. (FOF ¶ 16(e).) While Decedent and Alexander were at the coffee machine, an individual reached over the counter where Wolff was manning the cash register and attempted to grab cash out of the cash drawer. (FOF ¶ 16(f).) Wolff shouted and the thief ran out the door with Decedent, Alexander, and Rankin chasing after him. (FOF ¶ 16(f); Board Op. at 5.) The Board summarized Wolff's testimony as to what happened after Decedent chased the thief out of the store:

> Ms. Wolff further testified that she could see through the store window that [Decedent] was leaning into the thief's car trying to stop him. The thief started driving away, dragging [Decedent]. She lost sight of the car. When it came

into view again [Decedent] was on the hood of the car speeding toward the parking lot exit. [Decedent] fell off the car, the car ran over his head, and the thief took off.

> Ms. Wolff testified that she could see [Decedent] attempting to pull the thief from the car. She did not see either [Decedent] or the thief with a gun. [Alexander] brought a gun back into the station after picking it up from the ground. The gun was [Decedent's].

(Board Op. at 5 (citations omitted).) Alexander testified that Decedent got caught on the side mirror of the thief's vehicle and the car ran over Decedent. (FOF ¶ 18(c).) Alexander testified that Decedent asked the thief to stop the car and, when the thief did not comply, Decedent pulled out his gun. (Board Op. at 6.) Alexander testified further that Decedent pointed his gun at the thief through the windshield of the car. (Board Op. at 6.)

The Board summarized Rankin's testimony as follows:

> Mr. Rankin saw the thief walk to his vehicle, open the door and get in. He stated that [Decedent] drew his gun as the thief was getting into the vehicle. He estimated that [Decedent] stood at the driver's side front tire pointing the gun through the windshield for a solid three seconds as the thief started the car. The thief was looking at [Decedent], who was telling him to stop. Mr. Rankin stated that he was pretty sure the thief had both of his hands on the steering wheel. The thief drove forward and had to cut the wheel to get out of the parking lot toward Route 51. [Decedent's] body went onto the hood of the car. Mr. Rankin estimated that [Decedent] remained on the car for 20 to 25 feet, then was dragged under the car.

(Board Op. at 6–7 (citations omitted) (footnote omitted).)

The WCJ found that Decedent did not violate a positive work rule on November 28, 2009 by carrying a firearm on Employer's premises or attempting to stop a robber from fleeing Employer's premises.[2] (FOF ¶ 43.) The WCJ found that Decedent was furthering the business affairs of Employer on November 28, 2009, when: (1) he was present on Employer's premises shortly before his regular shift to correct a problem with the cash register; (2) he remained on the premises to stock the cooler; and (3) he was injured as a result of being struck by the thief's car when the thief fled the premises after a robbery attempt. (FOF ¶¶ 40–41.) The WCJ concluded that Decedent met his burden of proof on the Claim Petition that he sustained a work-related injury on November 28, 2009. As such, the WCJ awarded Decedent's estate workers' compensation benefits from November 28, 2009 to April 2, 2010, but did not award benefits for any medical or burial expenses.

Employer appealed to the Board. Upon review, the Board did not disturb the WCJ's credibility determination that Decedent was a management employee. (Board Op. at 9.) As a result, the Board concluded that the WCJ properly found that Decedent was furthering Employer's business affairs by coming to Employer's store outside his scheduled shift to correct the cash register mistake and by staying to stock the cooler. (Board Op. at 9.) However, the Board determined that the WCJ erroneously concluded that Decedent was also furthering Employer's business

affairs when he was injured after pursuing and attempting to stop the thief. (Board Op. at 9.) The Board reasoned as follows:

> The credible testimony established that after Ms. Wolff shouted at him, the thief left the store and went directly to his car, thereby showing an intention to leave without further incident. All three witnesses agreed that [Decedent] followed the thief out of the store, placed himself in close proximity to the vehicle and attempted to prevent the thief from leaving. [Ms.] Wolff stated that [Decedent] reached into the car to stop him; the other witnesses testified consistently that [Decedent] drew a weapon and aimed it at the thief at close range. Mr. Rankin testified that he was pretty sure that both of the thief's hands were visible on the steering wheel.
>
> We cannot agree that the duties of a convenience store manager include the pursuit and apprehension of criminal suspects. Rather, [Decedent] abandoned his employment by pursuing the suspect and physically engaging with him, with or without a weapon. *See, Stevens v. [Workmen's Compensation Appeal Board] (Pennsylvania Gas & Water Co.)*, 124 Pa.Cmwlth. 486, 556 A.2d 522 (1989) (traveling employee abandoned his employment by confronting and engaging in a fistfight with a stranger). Neither can [Decedent's] actions be characterized as an innocent and inconsequential departure analogous to the claimant's run and leap at a customer's basketball hoop in *Baby's Room v. [Workers' Compensation Appeal Board] (Stairs)*, 860 A.2d 200 (Pa. Cmwlth.2004). Therefore, [Decedent] did not meet his burden, and it was not

---

**2.** A violation of a positive work rule is an affirmative defense to a claim petition. *Habib v. Workers' Compensation Appeal Board (John Roth Paving Pavemasters)*, 29 A.3d 409, 413 (Pa.Cmwlth.2011). The employer must prove that: (1) the injury was caused by the rule violation; (2) the employee actually knew of the rule; and (3) the rule implicated an activity not connected with the employee's duties. *Id.*

necessary for [Employer] to establish the violation of a positive work order. (Board Op. at 9–10 (footnote omitted).) The Board noted further that a claimant's premeditated, deliberate, extreme, and inherently high-risk actions are sufficient to remove him or her from the course and scope of employment. (Board Op. at 10 n. 6) (citing *Penn State University v. Workers' Compensation Appeal Board (Smith)*, 15 A.3d 949, 955 (Pa.Cmwlth.2011) (holding that the claimant took himself out of the course and scope of employment when he jumped down a flight of stairs)). Accordingly, the Board reversed the WCJ's Decision. Claimant now petitions this Court for review.

◼ The issue before this Court is whether Decedent had abandoned his employment when he was injured on Employer's premises while trying to stop an individual from leaving the premises after an attempted robbery of Employer's store.

In support of this appeal, Claimant advances two primary arguments. Claimant first argues that there cannot be any real dispute that the injuries are related to Decedent's employment. It is undisputed that Decedent was called to Employer's store and was performing his job duties immediately prior to the incident; therefore, by virtue of being on the premises, Decedent was furthering Employer's business interests. Claimant contends that the Board erroneously concluded that, in those few seconds and while remaining on Employer's premises, Decedent somehow "abandoned" his employment by confronting the thief and, thus, was not covered by the Workers' Compensation Act[3] (Act) when struck by the car. Second, Claimant argues that the evidence supports a finding that Employer did not prohibit Decedent from carrying a firearm or forcefully resisting a robbery. Claimant argues that, even if Decedent had not possessed a firearm, the thief still would have run him over with the car.

In response, Employer argues that at the time of Decedent's injuries he had embarked on a vigilante mission to apprehend the fleeing suspect in an already foiled robbery attempt. Employer contends that while Decedent may have been functioning as an employee prior to the robbery attempt, he abandoned his employment when he ran outside the store in pursuit of the thief. Such acts are far removed from the job duties of a store manager. Employer asserts that the record shows through the testimony of Wolff, Alexander, and Rankin that the robbery had already been thwarted by Wolff and the thief had exited the store, thereby alleviating any threat to Employer when Decedent chased after the thief, and that Decedent did not make contact with the thief until the thief had already jumped into his car. The testimony further shows that the thief saw Decedent threaten him with a gun immediately before the thief ran over Decedent with the car. Employer contends that it had instructed Decedent and the other employees two weeks prior to the incident not to be heroes by resisting robbery attempts. (*See* Smith Dep. at 8–9, R.R. at 269a–70a; Mazzarini Dep. at 11–13, R.R. at 320a–22a.)

◼ In reviewing the issue presented here, "this Court must keep in mind that the [Act] is remedial in nature and is intended to benefit the worker; therefore, the Act must be liberally construed to effectuate its humanitarian objectives." *Rite Care Resources v. Workmen's Compensation Appeal Board (Davis)*, 154 Pa. Cmwlth. 336, 623 A.2d 917, 920 (1993). Nonetheless, it is the "claimant [who]

---

**3.** Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4; 2501–2708.

bears the burden of proving all elements necessary to support an award" of workers' compensation benefits. *Lewis v. Workers' Compensation Appeal Board (Andy Frain Services, Inc.)*, 29 A.3d 851, 861 (Pa.Cmwlth.2011). Section 301(c)(1) of the Act[4] provides that an injury must occur in the course and scope of employment and be causally related thereto in order for the injury to be compensable. "An activity that does not further the affairs of the employer will take the employee out of the course and scope of employment and serve as a basis for denial of the claim by the WCJ." *Penn State*, 15 A.3d at 954. However, "[t]he operative phrase 'actually engaged in the furtherance of the business or affairs of the employer,' which is usually expressed as 'in the course of employment,' must be given a liberal construction." *Lewis*, 29 A.3d at 862 (quoting *Southeastern Pennsylvania Transportation Authority v. Workers' Compensation Appeal Board (McDowell)*, 730 A.2d 562, 564 (Pa.Cmwlth.1999)). As recently emphasized by this Court, " '[a]n employe is entitled to compensation for every injury received on the premises of his employer during the hours of employment ... **so long as there is nothing to show that he had abandoned the course of his employment or was engaged in something wholly foreign thereto.'**" *Trigon Holdings, Inc. v. Workers' Compensation Appeal Board (Griffith)*, 74 A.3d 359, 362 (Pa.Cmwlth.2013) (quoting *Henry v. Lit Brothers*, 193 Pa.Super. 543, 165 A.2d 406, 409 (1960)) (emphasis in original). Whether an employee is acting in the course of his or her employment at the time of an injury is a question of law, which must be based on the WCJ's findings of fact. *Id.*

Here, the WCJ found that Decedent was required to be on the premises on November 28, 2009, and he was furthering Em-

ployer's business affairs by repairing the cash register and stocking the cooler. (FOF ¶¶ 40–41.) The parties stipulated that Decedent was struck by a vehicle on November 28, 2009 at approximately 8:01 p.m., while on Employer's premises. (Board Op. at 1.) Therefore, in order to deny Decedent's Claim Petition for workers' compensation benefits suffered as a result of being struck by the vehicle, the WCJ's findings must support the conclusion that he abandoned his employment or was engaged in an activity wholly foreign thereto.

Here, the WCJ accepted the testimony of Wolff and Todd as credible that there were many robbery attempts and attacks on employees over the years at Employer's store. (FOF ¶¶ 16(b), 17(b), 36.) The WCJ further found that Decedent used a firearm to stop an attempted robbery of Employer's store in 2007 and that Employer did not discipline Decedent for his actions. (FOF ¶¶ 37–38.) Moreover, while Employer contends that it had instructed Decedent and the other employees two weeks prior to the November 28, 2009 incident not to be heroes by resisting robbery attempts, the WCJ did not accept this evidence as credible. Given the past practice by Employer of permitting Decedent to not only carry a firearm, but to thwart a robbery attempt without consequence, we conclude that Decedent did not actively disengage himself from his work responsibilities when he attempted to stop the thief from fleeing Employer's premises on November 28, 2009. While the events of November 28, 2009 show that Decedent perhaps made an error in judgment, the facts, as found by the WCJ, support the conclusion that Decedent's job duties, as Employer's night manager, included securing the safety of his fellow employees and

4. 77 P.S. § 411(1).

the customers who patronized Employer's store.

Moreover, the facts show that Decedent did not attempt to stop the thief from fleeing to further his own interests; rather, the facts show that Decedent was furthering the interests of Employer. When the thief attempted to take money from the cash register, Decedent was still on the premises and standing near the coffee machine in the back of the store. (FOF ¶¶ 16(f), 21(d).) Wolff started screaming and the thief immediately ran out of the store. (FOF ¶¶ 16(f), 21(d).) Decedent instantly reacted by running out of the store to stop the thief from fleeing and was run over by the thief's vehicle when the thief refused to stop. (FOF ¶¶ 16(f), 18(c).) This all occurred within a matter of minutes. There is no finding by the WCJ that Decedent was aware that the thief had not actually taken any money from the cash register or that any threat to Employer was alleviated when the thief ran from the store. As such, Decedent's pursuit of the thief was not, as Employer argues, so far removed from his job duties as Employer's store manager as to constitute abandonment of "the course of his employment or ... engag[ing] in something wholly foreign thereto." *Trigon Holdings,* 74 A.3d at 362 (emphasis omitted). Accordingly, the Board erred.

For the foregoing reasons, the Board's Order is reversed.

### *ORDER*

**NOW,** May 27, 2014, the Order of the Workers' Compensation Appeal Board entered in the above–captioned matter is hereby **REVERSED.**