J. A15014/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CHRISTINE MIKULSKY AND | : | IN THE SUPERIOR COURT OF |
| STANLEY MIKULSKY, | : | PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| NORTHTEC, INC. AND | : | No. 1785 EDA 2015 |
| ESTEE LAUDER, INC. AND | : | |
| ESTEE LAUDER COMPANIES, INC. | : | |

Appeal from the Order, April 27, 2015,
in the Court of Common Pleas of Bucks County
Civil Division at No. 2009-00584

BEFORE:  FORD ELLIOTT, P.J.E., DUBOW AND JENKINS, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:  **FILED NOVEMBER 14, 2016**

Christine Mikulsky ("Mikulsky") and Stanley Mikulsky appeal the order of the Court of Common Pleas of Bucks County that granted the summary judgment motion of Northtec, Inc.; Northtec, LLC ("Employer"); Estee Lauder, Inc.; and Estee Lauder Companies and dismissed all claims filed against appellees.

Mikulsky worked for Employer as a compounder.[1]  Employer was in the business of producing cosmetics for other companies.  On December 15, 2007, Mikulsky, who was not scheduled to work that day, attended

---

[1] Mikulsky testified that, as a compounder, she would "mix the powders, different ingredients to make the blushes or the face powers [sic] or the eye shadows."  (Notes of testimony, 5/13/08 at 7.)

Employer's warehouse sale. Mikulsky received an invitation to the sale in her pay envelope. Employees were invited to attend the sale from 7:00 a.m. to 3:00 p.m. Mikulsky arrived on the day of the sale with a friend. While waiting in line to enter the warehouse, Mikulsky left the line and went back to her car to get a pair of gloves. As she stepped from the sidewalk into the parking lot, she tripped over a concrete parking bumper and fell. (Notes of testimony, 5/13/08 at 7-12.) Mikulsky alleged that, as a result of the fall, she broke her right elbow and injured her right shoulder. Mikulsky did not return to work following the fall.

On March 6, 2008, Mikulsky petitioned for workers' compensation benefits and sought full disability benefits from December 15, 2007 forward, the payment of medical bills, and counsel fees to be paid by Employer. (Claim Petition, 3/6/08 at 2.) Employer answered and denied all allegations.

On October 13, 2008, Mikulsky and Employer entered into a Compromise and Release Agreement ("Agreement.") The parties agreed that Employer would pay Mikulsky the sum of $65,000 which "represents payment of all future indemnity claims for the work related injury of 12/15/2007." (Agreement, 10/13/08 at 3 ¶13.) The Agreement also provided that "[t]he release portion of this Agreement shall apply to all injuries alleged to be related to the December 15, 2007 injury." (**Id.** at 4 ¶4 (continued).) The Agreement also contained the following relevant miscellaneous provisions:

> The parties enter into this Agreement in consideration of $65,000.00. This $65,000.00 figure resolves any and all issues related to the claimant[']s December 15, 2007 injury.
>
> As of the moment that the Judge approves this Agreement in the form of a bench order, the employer's obligation to pay indemnity, past, present and future (weekly wage loss benefits) shall be absolutely and forever extinguished.
>
> . . . .
>
> This Agreement resolves any and all issues that have been and/or can be plausibly raised as a result of the claimant's December 15, 2007 injury.

*Id.* at 4-5 ¶18 (continued).

The workers' compensation judge approved the Agreement by order dated October 14, 2008.

On January 22, 2009, appellants filed a complaint in the trial court and alleged that on or about December 15, 2007, the date of Mikulsky's injury, and for some time before that, appellees negligently, carelessly, and recklessly maintained their property where the warehouse was located and created an unreasonable risk of harm to pedestrians, invitees, guests, and visitors. (Complaint, 1/22/09 at 2 ¶9.) As a result of the negligence of appellees, Mikulsky alleged that she suffered the following injuries:

> comminuted right lateral condyle fracture, requiring open reduction and internal fixation; rotator cuff tear of the supraspinatus and upper infraspinatus with retraction beyond the midhumeral head with significant atrophy and fatty replacement; weakness and restricted range of motion of right elbow and right shoulder; various cuts, scrapes and bruises;

- 3 -

> severe damage to her nerves and nervous system
> and various other ills and injuries.

Complaint, at 4 ¶15. As a result of these injuries, Mikulsky stated that she could not work and suffered a severe loss of earnings and impairment of her earning capacity and power. Stanley Mikulsky included a loss of consortium claim. In each count of the three-count complaint, appellants sought in excess of $50,000 in damages.

Following discovery, appellees, on November 7, 2014, moved for summary judgment. Appellees alleged that the warehouse property was owned by Keystone Crossing, III, LLC. Appellees further alleged that appellee Northtec, Inc., was not in existence as it had been dissolved in 1997. Further, appellees Estee Lauder, Inc., and Estee Lauder Companies, LLC, were not lessees of the warehouse, parking lot, or property and had no control over those places. Further, appellees asserted that because Mikulsky signed the Agreement which resolved any and all issues against Employer, Mikulsky could not pursue a civil action against Employer and the other appellees.

On April 27, 2015, the trial court granted summary judgment and dismissed all claims against appellees. The trial court granted the motion because Mikulsky had previously released Employer from liability for all injuries related to the December 15, 2007 incident, when she executed the Agreement. Also, the trial court determined that the Estee Lauder appellees

were not liable to her because they were not her employer and did not have any ownership or control of the warehouse and the surrounding area.

Appellants raise the following issues for this court's review:

1. Was [Mikulsky] acting within the course of her employment and furthering her employer's business or affairs when she was injured while attending her employer's warehouse sale of cosmetics on her day off, when [Employer] did not require her to attend the sale, the sale was not a tradition in her workplace, the sale was not designed to promote good relations among the employees, she was not injured while engaging in an activity or maintaining a skill necessary to the performance of her job?

2. Is the present tort action barred by a Compromise and Release Agreement under Section 449(a) of the Workers' Compensation Act, which did not admit any liability for a work-related injury or that [Mikulsky] was acting in the course of her employment when she was injured, did not obligate the employer to pay any wage losses or medical bills, and did not bar the injured employee from pursuing claims arising outside of the Workers' Compensation Act?

Appellant's brief at 4 (footnote omitted).

This court reviews a grant of summary judgment under the following well-settled standards:

> Pennsylvania law provides that summary judgment may be granted only in those cases in which the record clearly shows that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. The moving party has the burden of proving that no genuine issues of

material fact exist. In determining whether to grant summary judgment, the trial court must view the record in the light most favorable to the non-moving party and must resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Thus, summary judgment is proper only when the uncontraverted allegations in the pleadings, depositions, answers to interrogatories, admissions of record, and submitted affidavits demonstrate that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law. In sum, only when the facts are so clear that reasonable minds cannot differ, may a trial court properly enter summary judgment.

[O]n appeal from a grant of summary judgment, we must examine the record in a light most favorable to the non-moving party. With regard to questions of law, an appellate court's scope of review is plenary. The Superior Court will reverse a grant of summary judgment only if the trial court has committed an error of law or abused its discretion. Judicial discretion requires action in conformity with law based on the facts and circumstances before the trial court after hearing and consideration.

*Gutteridge v. A.P. Green Services, Inc.*, 804 A.2d 650, 651 (Pa.Super. 2002).

*Wright v. Allied Signal, Inc.*, 963 A.2d 511, 514 (Pa.Super. 2008) (citation omitted).

Pennsylvania Rule of Civil Procedure 1035.2 provides:

> After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law
>
> (1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or
>
> (2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa.R.C.P. No. 1035.2.

Initially, appellants contend that Mikulsky was not in the course and scope of her employment when she was injured.

Section 303(a) of the Workers' Compensation Act ("Act"),[2] 77 P.S. § 481(a), provides:

> The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employes, his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death as defined in section 301(c)(1) and (2) or occupational disease as defined in section 108.

---

[2] Act of June 2, 1915, P.L. 736, **as amended**. This section was added by the Act of June 24, 1996, P.L. 350.

- 7 -

77 P.S. § 481(a).

The terms "injury," "personal injury" and "in the course and scope of employment" are defined in Section 301(c) of the Act, 77 P.S. § 411(1), as follows:

> (1) The terms "injury" and "personal injury," as used in this act shall be construed to mean an injury to an employe . . . arising in the course of his employment and related thereto. . . . The term "injury arising in the course of his employment," as used in this article . . . shall include all . . . injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere, and shall include all injuries caused by the condition of the premises or by the operation of the employer's business or affairs thereon, sustained by the employe, who, though not so engaged, is injured upon the premises occupied by or under the control of the employer, or upon which the employer's business or affairs are being carried on, the employe's presence thereon being required by the nature of his employment.

77 P.S. § 411(1).

Appellants undertake a lengthy analysis as to whether Mikulsky was injured in the course of her employment. Appellants ignore the fact that Mikulsky received $65,000 in the Agreement in lieu of workers' compensation benefits. In order to be eligible for workers' compensation benefits, a claimant must establish that he was (1) in an employment relationship, (2) injured, (3) the accident or injury arose in the course of employment, and (4) the injury was related to the employment. ***Verbilla v.***

***Workmen's Compensation Appeal Board (Schuykill Nursing Ass'n)***, 668 A.2d 601, 603-604 (Pa.Cmwlth. 1995).

Here, Mikulsky petitioned for benefits when she filed a claim petition and alleged that she was entitled to workers' compensation benefits because she was injured at an Employer-sponsored event at Employer's warehouse. Mikulsky sought full disability benefits from December 15, 2007, the date of her fall, forward as compensation for her inability to perform her job due to her injuries. Curiously, Mikulsky asserted that her injuries were work-related when she petitioned for benefits. Now, however, after accepting the $65,000, she asserts that she was not injured in the course and scope of her employment.

Similarly, Mikulsky executed the Agreement in which she received $65,000. Paragraph 13 of the Agreement states that the "[t]he sum of $65,000 represents payment of all future indemnity claims for the **work related injury of 12/15/2007**." (Agreement, at 3 ¶13 (emphasis added).) Mikulsky signed the Agreement and admitted that she had read the Agreement and agreed to its contents. (***See*** Agreement at 6.)

The fact that Mikulsky brought a claim petition that was settled and was compensated for an admitted work-related injury presupposes that Mikulsky was acting in the course and scope of her employment. As this court stated in ***Wasserman v. Fifth & Reed Hospital***, 660 A.2d 600, 604 (Pa.Super. 1995):

> As part of the quid pro quo of the Workers' Compensation Act (the "Act"), an employee surrenders the right to sue an employer in tort for injuries received in the course of employment to obtain the benefit of strict liability. 77 P.S. § 481(a). If an injury is compensable under the Act, the compensation provided by that Act is the employee's exclusive remedy.

By admitting that she suffered a work-related injury, Mikulsky admitted that she was injured in the course and scope of her employment as an injury would not be compensable under the Act, if it were not work-related, and an injury would not be work-related if it did not occur during the course and scope of her employment. Mikulsky cannot claim that she suffered an injury in the course and scope of her employment for workers' compensation purposes and then claim that she did not suffer an injury in the course and scope of her employment for her personal injury action in the trial court when there is only one injury. It would appear that Mikulsky is judicially estopped from taking such a position.

> Judicial estoppel is an equitable, judicially-created doctrine designed to protect the integrity of the courts by preventing litigants from playing fast and loose with the judicial system by adopting whatever position suits the moment. Unlike collateral estoppel or **res judicata**, it does not depend on relationships between parties, but rather on the relationship of one party to one or more tribunals. In essence, the doctrine prohibits parties from switching legal positions to suit their own ends.

**Sunbeam Corp. v. Liberty Mut. Ins. Co.**, 781 A.2d 1189, 1192 (Pa. 2001). This court cannot accept appellants' contention.

Appellants next contend that the release does not bar their suit in negligence brought in the trial court. Appellants argue that the Agreement was expressly limited to the "impairment of [Mikulsky's] earning power for the remainder of her life" (Agreement, at 3 ¶13) and did not purport to serve as compensation for her pain, suffering, and other damages not contemplated by the Act.

First, appellants cite no authority for the proposition that an employee/claimant can recover under the Act for loss of earning power and then sue in a court of common pleas for damages related to pain and suffering. In fact, this court has held that under the Act, an employee/claimant surrenders the right to sue an employer in tort for injuries received in the course of employment to obtain the benefit of the Act's strict liability with certain exceptions not applicable here. **See Wasserman**. As we have determined that Mikulsky admitted that she was injured in the course of her employment, she does not have the right to sue in tort.

Furthermore, even if appellants could proceed in tort, Mikulsky executed the Agreement which contained the following language: "The release portion of this Agreement shall apply to all injuries alleged to be related to the December 15, 2007 injury." (Agreement, at 4 ¶4 (continued).) The Agreement also states that "This Agreement resolves any and all issues that have been and/or can be plausibly raised as a result of

the claimant's December 15, 2007 injury." (Agreement, at 4 ¶18 (continued).) Appellants argue that this language only applies to injuries that would come under the Act.

In ***Zuber v. Boscov's***, Civil Action No. 15-3874, 2016 WL 1392263 (E.D. Pa. April 8, 2016), Craig Zuber ("Zuber") commenced an action against Boscov's, a department store, in federal district court and alleged violations of the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C.A. §§ 2601-2654. Boscov's moved to dismiss on the basis that Zuber had previously executed a workers' compensation release with Boscov's on April 8, 2015, which barred the claims under the FMLA. Zuber was employed by Boscov's as a manager at the Fairgrounds Farmers Market in Reading, Pennsylvania. On August 12, 2014, Zuber suffered an eye injury while at work which required medical attention. He returned to work on August 14, 2014. He suffered complications from the eye injury and obtained a doctor's note for a leave of absence from August 17, 2014, through August 24, 2014. Zuber returned to work on August 26, 2014. He was discharged from employment on September 10, 2014, for an alleged security breach. At some point Zuber filed a claim petition for workers' compensation benefits relating to the eye injury. The workers' compensation claim was resolved pursuant to a compromise and release agreement. ***Id.*** at *1. Zuber received $10,000 in exchange for "forever relinquishing any and all rights to seek any and all past, present and/or future benefits, including, but not limited to, wage loss

benefits, specific loss benefits, disfigurement benefits, and/or medical benefits for or in connection with the alleged 8/12/2014 work injury claim."

*Id.* at *2.

In addition, the release stated:

> Employer and Employee intend for the herein Compromise and Release Agreement to be a full and final resolution of all aspects of the 8/12/2014 alleged work injury claim and its sequela whether known or unknown at this time in exchange for Employer paying Employee the one-time lump sum payment . . . . Employee is forever relinquishing any and all rights to seek any and all past, present and/or future benefits including, but not limited to, wage loss benefits, specific loss benefits, disfigurement benefits, medical benefits or any other monies of any kind including, but not limited to, interest, costs, attorney's fees and/or penalties for or in connection with the alleged . . . work injury claim as well as any other work injury claim(s) Employee may have with or against Employer up through and including 4/7/2015.

*Id.* at *2.

Boscov's argued that the language of the release was broad enough to encompass claims under the FMLA for the same injury. The Federal District Court for the Eastern District of Pennsylvania found that the language in the release (especially the phrase "sequela whether known or unknown at the time" and that Zuber was forever relinquishing any and all rights to seek any past, present, or future benefits) was sufficiently broad to encompass his FMLA claim. The district court granted Boscov's motion to dismiss on the basis that Zuber's execution of the release in relation to his workers'

compensation claim served as a waiver of any claim under the FMLA. ***Id.*** at *3.

It is a well-settled principle that federal court decisions, except for the United States Supreme Court, are not binding on this court but can be used as persuasive authority. ***Bochetto v. Piper Aircraft Co.***, 94 A.3d 1044 (Pa.Super. 2014). Although ***Zuber*** is a federal case, this court takes note of the fact that the court in ***Zuber*** looked to the language of the release to determine whether a release issued in a workers' compensation proceeding could act as a bar to other litigation. Here, the release portion of the Agreement resolved "any and all issues that have been and/or can be plausibly raised as a result of the claimant's December 15, 2007 injury." (Agreement, 10/13/08 at 4-5 ¶18 (continued).) Employing the reasoning of ***Zuber***, the release here is sufficiently broad to encompass the action brought by appellants. The trial court did not commit an error of law or abuse its discretion when it granted the motion for summary judgment.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/14/2016

- 14 -