**Grant D. SCHIRF, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (BLAIRSVILLE MACHINE PRODUCT COMPANY & the PMA Group), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 28, 1994.

Decided April 20, 1995.

Vincent J. Quatrini, Jr., for petitioner.

Gerald J. Yanity, for respondent.

Before DOYLE and KELLEY, JJ., and NARICK, Senior Judge.

DOYLE, Judge.

Before the Court is the appeal of Grant D. Schirf (Claimant) from an order of Workmen's Compensation Appeal Board which affirmed a referee's order dismissing his claim petition.

Claimant was a "broach operator"[1] for Blairsville Machine Products (Employer), for whom he had worked for thirteen years. On April 3, 1991, he asked for and received permission to take home an A-frame hoist which he needed to remove and replace an engine for his personal car. He testified that he was given permission by Warren Lockard, his supervisor, and was issued a "plant pass" to remove the hoist. Claimant testified further that he had often borrowed equipment from Employer.

Twenty minutes after the end of his regular shift, he was dismantling the hoist and the top portion swung down and smashed his left hand, particularly the fourth and fifth fingers. Claimant testified that he was totally disabled from working as a result of this injury from April 4, 1991, to June 10, 1991. Thereafter, he returned to work with an undetermined degree of disability, not evidenced by any loss of earnings.

Joseph Serwinski, Human Resource Director and/or Government Relations Manager for Employer, testified that the company had no specific policy concerning the borrowing of tools or equipment by employees. The plant pass, referred to by Claimant, was simply used for the purposes of keeping track of equipment. Serwinski testified that the A-frame hoist was not part of the equipment that Claimant was required to use in the regular course of his employment as a broach operator. Mark Wolford, another witness for Employer, offered similar testimony. Wolford and Serwinski testified that permitting Claimant to borrow the hoist was not intended to promote or foster morale, but was merely a courtesy that had traditionally been available to employees and certain community organizations. Accordingly, the referee concluded that Claimant was not injured in the course of his employment. The Board affirmed and this appeal followed.

The only issue for our review is to determine whether the Board correctly concluded that Claimant was not injured in the course and scope of his employment as defined by Section 301(c)(1) of the Act.[2] This issue is a question of law to be determined on the basis of the findings of fact. *Thomas Jefferson University Hospital v. Workmen's Compensation Appeal Board (Cattalo)*, 144 Pa.Commonwealth Ct. 302, 601 A.2d 476 (1991). Section 301(c)(1) of the Act, provides that:

> The term 'injury arising in the course of his employment,' as used in this article ... shall include all ... injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere, and shall include all injuries caused by the condition of the premises ... sustained by the employe, who, though not so engaged, is injured upon the premises occupied by or under the control of the employer, ... the employe's presence thereon being required by the nature of his employment.

1. A broach is a type of machine which is used to make parts for army tanks.

2. Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 411(1).

Claimant first argues that he was injured in the course of his employment because he was actually engaged in the furtherance of the affairs of Employer inasmuch as the ability to borrow tools fostered morale among the employees. Claimant relies on cases such as *Hemmler v. Workmen's Compensation Appeal Board (Clarks Summit State Hospital)*, 131 Pa.Commonwealth Ct. 24, 569 A.2d 395 (1990), and *Scott v. Workmen's Compensation Appeal Board (Packaging Corporation of America)*, 113 Pa.Commonwealth Ct. 80, 536 A.2d 492 (1988). In those cases, the claimants were injured while engaged in recreational activities which were sponsored or encouraged by the employer, because the employer wished to promote specific personnel policies and took affirmative steps to effectuate these personnel policies. For example in *Hemmler*, the claimant was injured while playing basketball during his lunch hour in the company gym. The employer had in place a program to encourage health and fitness of its employees, which was in the employer's best interest. To effectuate this policy the employer posted notices promoting fitness and exercise and made the company gym available to employees. Similarly in *Scott*, where the claimant was injured while playing on the company softball team, the employer sponsored and encouraged participation on the team by buying team uniforms and paying the participation fees. In both these cases the employers actively sought and encouraged employee participation in recreational programs to foster health, fitness, and morale.

Claimant's case, however, is more similar to the situation in *Moss v. Workmen's Compensation Appeal Board (Pennsylvania State Police)*, 160 Pa.Commonwealth Ct. 457, 635 A.2d 242 (1993), *petition for allowance of appeal denied*, 538 Pa. 638, 647 A.2d 513 (1994). In that case the claimant was injured while participating in the Pennsylvania Police Olympics. Although the employer encouraged the claimant to participate, and allowed him to use vacation time to participate, this was merely a courtesy. Employer took no affirmative action, such as sponsoring claimant's participation or reimbursing his expenses, to promote a specific policy. Similarly, in the case here, Employer merely permitted Claimant to borrow tools and equipment as a courtesy, but did not take affirmative steps to encourage this as part of a program to effectuate a personnel goal of Employer. Here, Employer had no specific policy of fostering morale by allowing employees to borrow tools and equipment. Although, undoubtedly, the privilege had an indirect effect on Employer's work force, such indirect and unintended benefits do not rise to the level of furthering the interests of Employer. We hold, therefore, that Claimant was not engaged in the furtherance of the affairs of Employer when he was injured and affirm this conclusion made by the referee and the Board.

Claimant also contends that even if he was not injured while engaged in the furtherance of the affairs of Employer, he was nevertheless in the course of his employment, because (1) the injury occurred on the premises of Employer, (2) Claimant's presence on the premises was required by the nature of his employment, and (3) the injury was caused by a condition of the premises. *See* Section 301(c)(1) of the Act; *Cattalo; Dana Corp. v. Workmen's Compensation Appeal Board (Gearhart)*, 120 Pa.Commonwealth Ct. 277, 548 A.2d 669 (1988), *petition for allowance of appeal denied*, 522 Pa. 606, 562 A.2d 828 (1989). All three elements are necessary to support such a claim. *Id.* We cannot agree with Claimant.

As to the first element, it is not disputed that Claimant's injury occurred on Employer's premises. To satisfy the second element, Claimant relies on *Cattalo* to support his argument. In that case, the claimant was injured in a stairwell while on her way to purchase parking tokens which were sold by the employer so that employees could park in a nearby parking lot at a reduced rate. We held that the claimant was required to be on the premises by her employment because it was (1) an employment benefit offered by employer to employees, (2) employees were required to go to a specific location selected by employer on employer's property, (3) employees could only buy tokens at the time chosen by the employer, and (4) the tokens were sold by other employees of employer. Thus, the entire episode was permeated with

the employer's sponsorship, direction, assistance and control.

However, the present case is distinguishable from *Cattalo*, because here the Claimant's presence on the premises was not required by the nature of his employment. Claimant was injured in the act of dismantling a piece of equipment which he was taking home for his own personal use, twenty minutes after he had finished his shift, while furthering an interest which was unrelated to his employment. Permission to borrow tools and equipment was merely a courtesy provided by Employer, not a specific benefit of employment that was sponsored by Employer. Other than requiring the execution of a "plant pass" to track the location of equipment, Employer took no affirmative steps to either dictate the manner in which employees were required to avail themselves of Employer's equipment, or otherwise control that activity.

Finally, Claimant argues that the third element is satisfied because the hoist was on Employer's "premises" and that his injury was thus caused by a condition of the premises. However, we need not address this argument since Claimant has failed to establish his entitlement under the second element, and, of course, compliance under all three elements is necessary to support his claim.

Accordingly, we hold that Claimant was not injured in the course of his employment and the decision of the Board is affirmed.

### ORDER

NOW, April 20, 1995, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby affirmed.