SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY, Petitioner,

v.

WORKERS' COMPENSATION APPEAL BOARD (McDO-WELL), Respondent.

Commonwealth Court of Pennsylvania.

Argued March 10, 1999.
Decided May 20, 1999.

Richard D. Harburg, Philadelphia, for petitioner.

Warren K. Soll, Philadelphia, for respondent.

Before COLINS, President Judge, and DOYLE, J., SMITH, J., PELLEGRINI, J., FRIEDMAN, J., FLAHERTY, J., and LEADBETTER, J.

SMITH, Judge.

The Southeastern Pennsylvania Transit Authority (SEPTA) appeals from an order of the Workers' Compensation Appeal Board (Board) which affirmed the decision of a Workers' Compensation Judge (WCJ) granting the claim petition of Brian McDowell. The sole issue before this Court is whether the Board erred in determining that McDowell was acting in the course and scope of his employment with SEPTA at the time of his injury.

McDowell is employed by SEPTA as a transit police officer. On May 7, 1995, while exercising in Pennypack Park, McDowell fell and injured his right knee. On June 29, 1995, he filed a claim petition alleging that he injured his knee while running in order to meet SEPTA's physical fitness standards. At a hearing before the WCJ, McDowell testified that SEPTA has physical fitness standards that police officers are required to meet throughout the course of their employment. SEPTA has requirements for trunk flexion, bench press, sit-ups and a one-and-one-half-mile run in twelve minutes or less. McDowell testified that in order to meet the running requirement, he ran in the park two times per week. He testified that on May 7, 1995, he was in the park running when he hit a depression on the running path and twisted his knee. McDowell stated that he underwent surgery on his knee on July 18, 1995. McDowell testified that he was receiving physical therapy but that he was unable at the time of the hearing to return to his pre-injury job.

SEPTA presented the testimony of Craig Price, a sergeant assigned to Staff Services in SEPTA's police department. Price acknowledged that SEPTA has physical fitness standards which are broken down into the following segments: body strength, body fat and aerobic capacity. Price testified that these standards are in place for the benefit of the officers, the riding public and SEPTA. Price testified that police officers are tested from four to six times per year and that if they do not meet the physical fitness standards, they could be subject to progressive discipline. Price testified that SEPTA encourages its police officers to keep fit by providing up to $240 yearly for gym memberships, by giving cash awards for successfully achieving interim goals and by giving bonus days. Price testified that when a police officer is hired and while the officer attends the police academy the officer is required to run one-and-one-half miles in twelve minutes or less. After a police officer graduates, there is no running requirement.[1]

On June 10, 1996, the WCJ issued a decision granting McDowell's claim petition. The WCJ concluded that McDowell was in the course of his employment at the time of his injury. Among the relevant

1. Because the parties stipulated that McDowell sustained a complete tear of the anterior cruciate ligament of his right knee on May 7, 1995, no medical testimony was presented.

factors considered by the WCJ were the following:

(1) [McDowell] was required to meet physical fitness standards, and would be tested 4–6 times per year; failure to meet the standards could result in disciplinary action.

(2) SEPTA's standard for running was 1.5 miles in 12 minutes or less.

(3) SEPTA's standards are for the benefit of the officers, the public, and SEPTA.

(4) SEPTA encourages its officers to keep fit and maintain their physical capacities in order to meet the standards.

(5) The Benjamin Franklin Clinic was available for SEPTA officers to use for fitness training; [McDowell] was unaware that the facility was available; SEPTA offers no separate room at SEPTA facilities for fitness training.

(6) The Benjamin Franklin Clinic provides officers documents regarding how to help themselves in maintaining the fitness requirements; the Clinic suggests a 'self-test' for running to the officers.

(7) [McDowell] ran in Pennypack Park to meet SEPTA's running standard of 1.5 miles in 12 minutes or less; after being employed by SEPTA, [McDowell's] only purpose in running was to meet SEPTA's running standards.

WCJ decision, p. 13. The WCJ concluded that McDowell was actually engaged in the furtherance of the employer's business within the meaning of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.1, 2501–2626, when he injured his knee. SEPTA appealed to the Board which affirmed the decision of the WCJ.[2]

■■■ Injuries sustained by an employee while "actually engaged in the furtherance of the business or affairs of the employer" are compensable whether the injuries occurred upon the employer's premises or elsewhere. Section 301(c) of the Act, 77 P.S. § 411;[3] *Brown v. Workmen's Compensation Appeal Board (Liken Employment Nursing Services)*, 138 Pa.Cmwlth. 560, 588 A.2d 1014 (1991). The operative phrase "actually engaged in the furtherance of the business or affairs of the employer," which is usually expressed as "in the course of employment," must be given a liberal construction. *See Tredyffrin–Easttown School District v. Breyer*, 48 Pa.Cmwlth. 81, 408 A.2d 1194 (1979). Determining when an employee is acting in the course of employment at the time of an injury is a question of law, which must be based on the findings of fact made by the WCJ. *City of Harrisburg v. Workmen's Compensation Appeal Board (Gebhart)*, 532 Pa. 592, 616 A.2d 1369 (1992); *Keiter v. Workmen's Compensation Appeal Board (Avondale Borough)*, 654 A.2d 629 (Pa. Cmwlth.1995).

SEPTA argues that the facts of the instant case are similar to those in *Moss v. Workmen's Compensation Appeal Board (Pennsylvania State Police)*, 160 Pa.Cmwlth. 457, 635 A.2d 242 (1993). In *Moss* this Court affirmed a referee's determination that a state trooper who sustained a left ankle sprain while participat-

---

**2.** This Court's review of the Board's decision is limited to determining whether necessary findings of fact are supported by substantial evidence on the record as a whole, whether an error of law was committed or whether constitutional rights were violated. *Estate of McGovern v. State Employees' Retirement Board*, 512 Pa. 377, 517 A.2d 523 (1986); *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa. Cmwlth. 436, 550 A.2d 1364 (1988).

**3.** Section 301(c) provides in pertinent part:

The terms 'injury' and 'personal injury,' as used in this act, shall be construed to mean an injury to an employe ... arising in the course of his [or her] employment and related thereto.... The term 'injury arising in the course of his [or her] employment,' as used in this article ... shall include all ... injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer, whether upon the premises or elsewhere....

ing in a basketball game during the Pennsylvania Police Olympics was not engaged in the course of his employment at the time of the injury. The employer in *Moss* permitted flyers advertising the olympics to be posted in police stations but did not sponsor the event, did not reimburse the participants for any expenses they incurred while participating and required participants to use vacation leave if they intended to participate in the activities during their normal work shift.

Such encouragement as the employer offered in *Moss* was a mere courtesy and did not represent affirmative action taken to promote any specific policy. *See Schirf v. Workmen's Compensation Appeal Board (Blairsville Machine Product Company)*, 658 A.2d 2 (Pa.Cmwlth.1995) (discussing *Moss*). In the instant case, however, SEPTA promoted a specific fitness policy for the benefit of its officers, the public and itself. The WCJ found that McDowell was assigned to the subway, a walking beat, and that his duties included arresting thieves and that he was required to "protect, run, and apprehend." Finding of Fact No. 2. SEPTA's requirement that its police officers meet physical fitness standards is thus directly related to performance of their job duties and directly furthers SEPTA's interest.

The facts of *Mann v. City of Philadelphia*, 128 Pa.Cmwlth. 499, 563 A.2d 1284 (1989), are more analogous to the instant case. In *Mann* the decedent was employed by the City of Philadelphia as a lifeguard. The decedent drowned while swimming in the pool on his unpaid dinner break. This Court held that the decedent was engaged in the furtherance of the employer's affairs at the time he drowned and was therefore in the course of his employment. The Court noted that the decedent had to practice his swimming skills in order to maintain his Red Cross certification, which was a condition of his continued employment as a City lifeguard. As in *Mann*, McDowell was required to meet certain physical fitness standards in

order to continue his employment with SEPTA, and SEPTA concedes in its brief that those standards required him to run one-and-one-half miles in twelve minutes or less. SEPTA's brief, pp. 5, 9.

SEPTA argues that it was not necessary for McDowell to run in a park in order for him to meet the physical fitness standards. SEPTA points out that it provides all police officers with the use of the Benjamin Franklin Clinic, located in downtown Philadelphia, in which they may exercise in order to meet the physical fitness standards. However, the WCJ found that McDowell had no knowledge that he was able to use this facility. The WCJ also found that SEPTA does not provide a separate room at its facilities with gym equipment where police officers can work out; that SEPTA does not supply police officers with a track where they can run; and that the use of the Benjamin Franklin Clinic is not a requirement for police officers. The WCJ further found that SEPTA provided a document to its police officers in which it suggested that they perform a "self test" by marking off a one-and-one-half-mile course around where they live in order to be able to meet the running standard.

In this regard the present case is similar to *City of Harrisburg*, where benefits were awarded to a police officer who accidentally shot himself while unholstering his service revolver upon returning home from work after the end of his work shift. The Supreme Court held that the police officer suffered a compensable injury. The court noted that a paramount part of a police officer's duty was to secure and store his or her service revolver after work and that the employer did not provide an area on the premises where its employees could properly secure and store their service revolvers. Similarly, in the case presently before the Court, SEPTA required its police officers to meet certain physical fitness standards but did not provide the officers with a track where they could run.

■ Moreover, the question before the Court is whether McDowell was actually

engaged in the furtherance of SEPTA's affairs at the time of his injury; the question is not whether McDowell was doing so in the proper place. As noted, injures suffered in the actual furtherance of the employer's affairs are compensable, whether upon the employer's premises or elsewhere, and SEPTA does not require its officers to use the Benjamin Franklin Clinic when exercising to meet SEPTA's standards. Section 301(c) of the Act, 77 P.S § 411; Finding of Fact No. 8. The fact that SEPTA offers some exercise facilities only provides additional evidence that McDowell's fitness was in SEPTA's interest. Based on the above discussion, the Court concludes that McDowell was furthering his employer's interests at the time of his injury. Accordingly, the order of the Board is affirmed.

### ORDER

AND NOW, this 20th day of May 1999, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby affirmed.

Judges DOYLE and LEADBETTER dissent.