IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Power Home Remodeling, Inc.,    :
    :
          Petitioner    :
    v.    : No. 1303 C.D. 2023
    : Argued:  June 4, 2024
Matthew Hess (Workers'    :
Compensation Appeal Board),    :
    :
          Respondent    :


BEFORE:    HONORABLE ANNE E. COVEY, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge (P.)
               HONORABLE ELLEN CEISLER, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK               FILED:  October 8, 2024

Power Home Remodeling, Inc. (Employer) petitions for review from a decision of the Workers' Compensation Appeal Board (Board).  The Board affirmed the Workers' Compensation Judge's (WCJ) grant of Matthew Hess's (Claimant) Claim Petition seeking workers' compensation benefits for an injury he sustained while on an all-terrain vehicle (ATV) tour in West Virginia.  On appeal, Employer argues that the injury that Claimant suffered did not occur within the course and scope of his employment and, even so, Claimant failed to afford Employer with proper notice of the injury under the Workers' Compensation Act (Act),[1] thus barring him from receiving benefits.  Upon careful review, we affirm.

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2710.

Employer describes itself as "a home improvement business and a sales marketing company that does home improvements." Petitioner's Brief at 5. At the time relevant to this proceeding, Claimant was serving as an interim vice president of operations for Employer's Philadelphia region. WCJ's Opinion, 2/8/23, Finding of Fact (F.F.) No. 1. However, on May 18, 2019, Claimant suffered severe injuries from an accident which occurred during an ATV tour in West Virginia. *Id*. As a result of the accident, Claimant suffered a litany of internal injuries and continues to suffer from paralysis.[2]

On October 8, 2020, Claimant filed the instant Claim Petition, seeking full disability benefits ongoing and asserting that Employer was afforded verbal notice of the injury on May 18, 2019. Reproduced Record (R.R.) at 1a-4a. Employer specifically denied the allegations in the Claim Petition, arguing, *inter alia*, that Claimant's injuries were not within the course and scope of his employment and denying that Claimant afforded notice to Employer. *Id*. at 5a-10a.

The WCJ considered the issue of whether Claimant's injury occurred in the course and scope of his employment to be the fundamental issue presented before him. To that end, relying on Claimant's testimony as well as Employer's

---

[2] Per his University of Kentucky Discharge Summary, Claimant was diagnosed with

> hemoperitoneum, renal injury, blunt abdominal trauma, neurogenic shock due to traumatic injury, traumatic shock, cerebral edema, traumatic subarachnoid hematoma with loss of consciousness, [traumatic brain injury], liver laceration, acute kidney injury due to trauma, hematoma of adrenal gland due to trauma, blunt trauma, anemia due to blood loss, altered mental state, acute traumatic spinal cord injury, acute respiratory failure with hypoxemia, acute respiratory insufficiency and acute pain due to trauma.

WCJ's Opinion at Summary of Evidence (S.E.) No. 10. Employer has indicated that it is only willing to agree to Claimant's back fracture and resulting paraplegia. *Id*. at S.E. No. 8.

witnesses' testimony, the WCJ observed that Employer had a history of encouraging teamwork, bolstering morale, and "finding promising candidates" for promotion and recruitment within the company. WCJ's Opinion at F.F. No. 4. The company achieved these goals by organizing events at Philadelphia Union games, Philadelphia Eagles games, and even a yearly "get together" in Mexico for employees over the Christmas season. *Id.* To this end, certain management employees, including Claimant, were given $1,500.00 monthly to further these goals. *Id.* Claimant likewise testified that a significant portion of his income - by way of a yearly bonus - was dependent on his ability to identify candidates for leadership roles and recruitment. *See* WCJ's Opinion, at S.E. No. 5a.

Consistent with the above stated objectives, Claimant testified that he organized a three-to-four day ATV tour in West Virginia for himself, Rob Lohr, Matt Zenuck, and Rob McAleer. WCJ's Opinion at F.F. No. 5. Both Lohr and Zenuck were also current employees who Claimant hoped to recruit to the operations division. *Id.* McAleer was not an employee, but Claimant had been trying to recruit McAleer for roughly two years and invited him on the trip for that purpose. *Id.*

To schedule this trip, Claimant stated that he notified Employer that he was "[m]eeting [his] guys in [West Virginia] for [an] ATV trip." WCJ's Opinion at F.F. No. 6. This notification was scheduled as vacation time. *Id.* However, Claimant related that it was the practice of Robert Borislow, his supervisor, to have any time out of one's primary office be scheduled under paid time off (PTO), for Borislow's own convenience, and to prevent the automated scheduling system from scheduling employees elsewhere. *Id.* Additionally, Claimant testified that he discussed this trip with Borislow who approved his request, although he did have to shorten the trip to accommodate a national training. *Id.* In response, Borislow

3

testified that it was company practice to have Employer's Special Events department plan a company sanctioned trip, rather than an individual employee. *Id.* Still, Claimant expressed that he organized business trips when the Special Events department was too busy, and offered another event, a trip to the Poconos for employees and their families, as an example where he, rather than the Special Events department, planned the outing. *Id.*

In reviewing the case *sub judice*, the WCJ considered a morass of conflicting evidence. For example, Claimant's failure to use the company credit card while on the trip; Claimant's testimony that he had forgotten it at home; Claimant's previous history of expensing work related costs to his personal credit card and then filing for reimbursement; and this was Claimant's third trip to West Virginia with substantially the same group. *See* WCJ's Opinion, S.E. at Nos. 5b, 13a-b.

Ultimately, however, the WCJ found that Claimant's injury was in the course and scope of his employment, stating:

> That the trip may have had elements of leisure/fun associated with it[] does not [diminish] it being undertaken in the best interest of [] Employer or in any way diminish that Claimant was acting within the course and scope of employment when injured. The testimony of [] Claimant, supporting the determinations of this [d]ecision, including without limitation his explanation as related to the documentation presented, are accepted over contra evidence, it being observed [that] Claimant was the only witness to testify both by deposition and at hearing.

WCJ's Opinion at F.F. No. 8. Additionally, the WCJ found as fact that Employer was afforded timely notice of the injury on May 18, 2019. *Id.* at F.F. No. 9.

Regarding any contrary evidence, the WCJ opined:

> Documentation as presented by [Employer] negating a work injury - including documentation filed on Claimant's behalf by his wife negating a work injury[3] - while giving one pause - on review, has not altered the determinations made in this [d]ecision, it being observed again that the injuries did not occur at a regular work-site of [] Employer - where one would easily assume, believe, and report an injury as work[]related - in contrast, as here, where the injuries occur at a distant location, far and remote from any established regular work[]station of []Employer, and the injury itself being caused by use of a[n] ATV, not typical to Claimant's employment - it is understandable that one could negate a work relationship, particularly, when considering the stress at the time of reporting on the accident - and, of course, one cannot assume reporting was done with knowledge of the law as to what is or is not a compensable work event when the injury occurs off-site.

WCJ's Opinion at F.F. No. 10. Ultimately, Employer appealed to the Board.

In an opinion circulated on October 18, 2023, the Board agreed with the WCJ and emphasized that "a crucial part of [Claimant's] job with [Employer] was training and 'wining and dining' employees that [Employer] could install as potential leaders[.]" Board Opinion, 10/18/23, at 19. Additionally, the Board acknowledged that this aspect of Claimant's employment accounted for 75% of his work,\ and proved to be a critical financial incentive as bonuses were determined by his success in identifying employees for promotion and recruitment. *Id*. Taken together with Claimant's testimony, which identified that the purpose of the ATV trip was to recruit Lohr, Zenuck, and McAleer for promotion or employment, the Board agreed with the WCJ that Claimant was furthering Employer's business interests on the trip. *Id*. at 20. Regarding the contrary evidence, the Board reasoned that Claimant's use of his personal credit card did not negate the purpose of the trip

---

[3] Claimant's wife filled out a form for short term disability benefits in which she described Claimant's injury as "off-job." *See* Reproduced Record at 343a.

and that the WCJ accepted Claimant's testimony on the "semantics" of Employer's scheduling system over that of Borislow. *Id.* Because the Board owed deference to the WCJ, it agreed that "Claimant was in the furtherance of [Employer's] business and was thus in the course and scope of his employment." *Id.* at 21.

On the issue of notice, the Board reasoned that "[t]here is no actual dispute that [Employer] was provided timely notice of the occurrence of the accident and Claimant's injuries[.]" Board Opinion at 21. In the Board's view, Employer demonstrated it had actual notice of the injury, because Employer flew Claimant's mother out to the University of Kentucky Hospital and provided lodging for his family to visit Claimant while he was being treated for his severe injuries. *Id.* Because Claimant's testimony, as accepted by the WCJ, indicated he had discussed the purpose of the trip with his supervisor, and Employer had actual knowledge of the injury, the Board again agreed with the WCJ that Claimant had afforded Employer proper notice. *Id.* at 21-22.

Notably, the Chairman of the Board dissented, writing: "I am constrained to conclude Claimant was not in the course/scope of employment. Third trip, same location, mostly same attendees. Not on the company credit card, not reimbursed, and not on work time, but vacation. Supervisor knew of trip but did not sanction. Private trip among friends." Board Opinion at 24. Likewise, a second commissioner dissented, writing: "I must dissent for the reasons outlined by the Chairman; failure to use the company card and failure to seek approval from his supervisor are measures which he took on other similar occasions." *Id.* Consequently, Employer timely petitioned this Court for review of the Board's decision on November 14, 2023.

6

On appeal, Employer presents two issues for our review: (1) whether Claimant's injury occurred outside the course and scope of his employment; and (2) whether Claimant afforded Employer proper notice of his work[]related injury under the Act.

As indicated, Employer's argument regarding the first issue is simple: Claimant was on vacation and not engaged in the course and scope of his employment when he suffered his injury. Petitioner's Brief at 23. Employer claims that the WCJ and the Board only came to a contrary conclusion by disregarding the competent evidence introduced by the testimony of Borislow,[4] Jamie Cardin,[5] and Jennifer Carreon-Montes,[6] in favor of Claimant's "self-serving[,]" uncorroborated

[4] In relevant part, Borislow testified by deposition that he did not have conversations with Claimant about the ATV trip being work related and that he disagreed with characterizing the trip as company authorized or sponsored. Board Opinion at 11. He denied telling Claimant to schedule vacation for the purposes of this trip, but agreed the company's scheduling system was useful for determining who was working on any given week. *Id*. at 12. He testified that as a "rising leader," he was invited to company trips for the purpose of mentorship, but that he did not go on any individual trips. *Id*. He also testified that he was unaware if there was a formally written policy for vice presidents to use the Special Events department for planning company trips. *Id*.

[5] Cardin, Employer's accounting manager, also testified by deposition. Board Opinion at 15. In relevant part, she testified that she had no record of Claimant organizing a trip like the May 2019 ATV trip. *Id*. at 16. Further, she testified that she had no record indicating Claimant used his Employer-issued credit card on this trip or that he submitted a request for reimbursement. *Id*.

[6] Carreon-Montes, Employer's director of Human Resources, testified by deposition. Board Opinion at 13. In pertinent part, Carreon-Montes testified that employees must report work injuries to management or Human Resources. *Id*. Whoever receives this report is to fill out an accident incident form for Employer's insurance carrier, preferably within 24 hours. *Id*. She testified to and included documentation demonstrating that Claimant had done this for injured employees of his own in the past. *Id*. at 14. Claimant was discussing ongoing work injuries concerning his staff with Employer even after his accident in August 2019. *Id*. She also testified that when Claimant was sent paperwork to obtain disability benefits, Claimant's wife filled it out on his behalf, indicating that the injury occurred "off-job." *Id*. On cross-examination, however, she agreed that the form specified "on-job" or "off-job," rather than "work[]related" or "non-
**(Footnote continued on next page…)**

7

testimony. *Id.* Similarly, Employer believes the WCJ disregarded the following competent evidence: (1) Claimant's choice to schedule this trip as vacation time; (2) his use of a personal credit card and failure to seek reimbursement; and (3) his failure to comply with Employer's procedures in organizing a work-sanctioned trip. *Id.* at 23-24. Thus, Employer contends that the WCJ did not rely on substantial evidence in reaching his decision and we need not defer to his findings. *Id.* at 24 (*contra Universal Cyclops Steel Corp. v. Workmen's Compensation Appeal Board (Krawczynski)*, 305 A.2d 757 (Pa. Cmwlth. 1973)).

Conversely, Claimant maintains that substantial evidence supports the conclusion that his injury occurred in the course and scope of employment. Respondent's Brief at 15. In fact, Claimant argues that our Supreme Court's caselaw and our own caselaw has repeatedly found voluntary or social engagements to be within the course and scope of a claimant's employment. *Id.* First, Claimant directs our attention to *Peters v. Workers' Compensation Appeal Board (Cintas Corp.)*, 263 A.3d 275, 293 (Pa. 2020), wherein our Supreme Court found a car accident which occurred after a work-sponsored event was in the course and scope of the claimant's employment, because the event benefitted the employer, even if just by improving social relationships among employees. Respondent's Brief at 15-16. Similarly, Claimant cites *Hemmler v. Workmen's Compensation Appeal Board (Clarks Summit State Hospital)*, 569 A.2d 395 (Pa. Cmwlth. 1990), wherein we found a claimant playing basketball during his lunch break with coworkers while on premises to have sufficiently advanced his employer's interests, such that the injury occurred in the course and scope of his employment. Respondent's Brief at 16.

---

work[]related." *Id.* at 15. She testified that it was not a company policy to request vacation for company trips. *Id.*

8

To that end, Claimant believes his testimony provided sufficient evidence that it was the practice of the company, and specifically of employees like Claimant, to organize work activities and events to provide the company with a means of identifying prospective candidates and employees for recruitment and promotion. Respondent's Brief at 17-18. Likewise, Claimant contends that the West Virginia ATV trip was consistent with this aspect of his employment, as he planned it for the sake of recruiting Lohr and Zenuk to his division and to recruit McAleer to the company. *Id.*

Claimant also reminds this Court that the WCJ is the ultimate fact finder and "exclusive arbiter of credibility and evidentiary weight." Respondent's Brief at 23 (quoting *Thompson v. Workers' Compensation Appeal Board (USF&G Co.)*, 781 A.2d 1146, 1150 (Pa. 2001)). Similarly, Claimant notes that the WCJ is afforded this deference because of his advantage in reviewing the evidence before him. Respondent's Brief at 24 (citing *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 828 A.2d 1043 (Pa. 2003)). Moreover, because this deference extends to the WCJ's resolution of conflicting witness testimony, and here the WCJ has resolved any conflicting evidence in Claimant's favor, Claimant urges this Court not to disturb the WCJ's finding on appeal. *Id*. at 24, 26. For essentially the same reason, Claimant argues that the WCJ did not capriciously disregard any of Employer's evidence, but simply assigned it less evidentiary weight. *Id.* at 28-30.

Initially, a claimant's eligibility for workers' compensation benefits is contingent on the injury occurring in the course of his employment. In relevant part, Section 301(c)(1) of the Act provides:

> The terms "injury" and "personal injury," as used in this [A]ct, shall be construed to mean an injury to an employe, regardless of his previous physical condition, except as

9

provided under subsection (f), arising in the course of his employment and related thereto . . . . The term "injury arising in the course of his employment," as used in this article . . . shall include all other injuries sustained **while the employe is actually engaged in the furtherance of the business or affairs of the employer**, whether upon the employer's premises or elsewhere, and shall include all injuries caused by the condition of the premises or by the operation of the employer's business or affairs thereon, sustained by the employe, who, though not so engaged, is injured upon the premises occupied by or under the control of the employer, or upon which the employer's business or affairs are being carried on, the employe's presence thereon being required by the nature of his employment.

77 P.S. §411(1) (emphasis added). Thus, an injury may arise in the course of employment, and is therefore compensable, in two situations: (1) where the injury occurs while the claimant is furthering the business or affairs of his employer, regardless of the location of the injury; and (2) where it occurs on the employer's premises and the claimant is required to be there. *U.S. Airways, Inc. v. Workers' Compensation Appeal Board (Bockelman)*, 179 A.3d 1177, 1179-80 (Pa. Cmwlth. 2018).

Importantly, because the Act is remedial in nature and intended to benefit the claimant, we must give the phrase "actually engaged in the furtherance of the business or affairs of the employer" a liberal construction, so that we may effectuate its humanitarian objectives. *Feaster v. S.K. Kelso & Sons*, 347 A.2d 521, 523-24 (Pa. Cmwlth. 1975). As such, determining whether a claimant's conduct is in the course and scope of his employment is a case-specific inquiry, one which must be based upon the factual findings made by the WCJ. *U.S. Airways v. Workers' Compensation Appeal Board (Dixon)*, 764 A.2d 635, 641 (Pa. Cmwlth. 2000) (citing *Wasserman v. Fifth & Reed Hospital*, 660 A.2d 600, 604 (Pa. Super. 1995); and

10

*Peterson v. Workmen's Compensation Appeal Board (PRN Nursing Agency)*, 597 A.2d 1116 (Pa. 1991)).

On that point, the WCJ has "unquestioned" authority over questions concerning credibility determinations, conflicting evidence, and evidentiary weight. *A & J Builders, Inc. v. Workers' Compensation Appeal Board (Verdi)*, 78 A.3d 1233, 1238 (Pa. Cmwlth. 2013). It is the WCJ's prerogative to accept or reject the testimony of a witness in whole or in part and we are bound by the WCJ's determinations. *Id.* Critically, our inquiry hinges solely on "whether there is evidence to support the findings actually made[,]" not whether evidence exists to support alternate findings. *Id.* (quoting *Minicozzi v. Workers' Compensation Appeal Board (Industrial Metal Plating, Inc.)*, 873 A.2d 25, 29 (Pa. Cmwlth. 2005)). Nevertheless, the WCJ's findings must be supported by substantial evidence, which is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan)*, 572 A.2d 838, 840-41 (Pa. Cmwlth. 1990).

Indeed, Claimant is correct that we have previously found morale boosting or leisure activities to further the business of the employer where the activity at issue was aligned with some objective or requirement of the claimant's employment.[7] For example, in *Mann v. City of Philadelphia*, 563 A.2d 1284, 1287 (Pa. Cmwlth. 1989), a decedent lifeguard drowned while swimming laps during his dinner break. We found that the decedent was furthering the interests of his

---

[7] *See Feaster*, 347 A.2d at 523-24 (claimant drowned while attending a voluntary company picnic without pay, but was nevertheless actually engaged in furthering the business of employer because the picnic improved the company's good will); *Tredyffrin-Easttown School District v. Breyer*, 408 A.2d 1194, 1194-95 (Pa. Cmwlth. 1979) (claimant, a math teacher and volunteer track coach for employer, was in the course and scope of employment when he hosted senior track athletes at his home for a picnic and lost sight in one of his eyes after being hit with a football, because employer encouraged claimant to engage in extracurricular activities with students).

11

employer while swimming on break, because his employment was contingent on him maintaining his Red Cross certification, which, in turn, was contingent on him maintaining his swimming abilities. *Id*.

To be sure, our inquiry focuses less so on the activity at issue than it does on whether the activity was traceable to the employer's encouragement or policy. In *Southeastern Pennsylvania Transportation Authority (SEPTA) v. Workers' Compensation Appeal Board (McDowell)*, 730 A.2d 562, 563-66 (Pa. Cmwlth. 1999), an *en banc* panel of this Court considered whether a SEPTA transit officer was furthering the interest of his employer when he injured his knee while running offsite in a park. We determined that this injury nevertheless occurred within the course and scope of the officer's employment, because he was training to meet SEPTA's fitness requirements which mandated that its officers pass a fitness test - including a one-and-one-half mile run in 12 minutes or less. *Id*.

In contrast, in *Moss v. Workmen's Compensation Appeal Board (Pennsylvania State Police)*, 635 A.2d 242, 243-44 (Pa. Cmwlth. 1993), we determined that an injury sustained by a Pennsylvania State Police officer during a basketball game, as part of a voluntary Pennsylvania State Police "Olympics," did not occur in the course and scope of the officer's employment. *Id*. We reasoned that although the employer had permitted employees to hang posters advertising the "Olympics," it was purely voluntary and was not otherwise encouraged by the employer in the pursuit of a specific objective or policy. *Id*.; *see also Schirf v. Workmen's Compensation Appeal Board (Blairsville Machine Product Company)*, 658 A.2d 2, 4 (Pa. Cmwlth. 1995). Thus, so long as the injury suffered by the claimant is traceable to an objective or requirement of his employer, and such a

12

finding is supported by substantial evidence, we must agree that the injury occurred within the course and scope of employment.

Presently, as Claimant related, one of the primary objectives of his role as a vice president was to identify current employees for promotion and prospective candidates for recruitment. In fact, Claimant considered this aspect of his position to be a "major part of [his] income[,]" as the bonuses offered to Employer's vice presidents were "heavily weighted" on the vice president's success in identifying employees for recruitment into their division of the company and their eventual promotion into leadership roles in other divisions within the company. WCJ's Hearing, 9/21/22, Notes of Testimony (N.T.), at 19-20. Moreover, according to Borislow's own testimony, Employer achieved its interest in promoting employee morale by providing financial incentives to its vice presidents:

> You know, our company is a relatively younger company and we thrive on culture. You know, at the end[] of the day we install windows and siding and roofing, but we are an organization that focuses on people just loving where they work, enjoying each other. And we provide our vice presidents, you know, a credit card -- you know, essentially, a budget on a credit card, encourage them to use it to take people out to dinner, buy people some lunch, invite a significant other, and that's -- you know, that's something that we encourage them to do to build their team.

R.R. at 210a; Exhibit G, Deposition of Robert Borislow. This further supplemented Claimant's testimony regarding "wining and dining" employees and prospective candidates, by taking them to soccer games, football games, yearly trips to Mexico, and a weekend in the Poconos with the employees' families. *See* WCJ's Opinion at F.F. No. 4. In sum, the WCJ's finding that Claimant's injury occurred while furthering the business of Employer is supported by substantial evidence, because

13

one can rationally conclude that Claimant undertook this trip for the purpose of identifying candidates for promotion and recruitment, which was wholly consistent with Employer's company culture of "wining and dining" the same. In this respect, like *Mann* and *SEPTA*, we can directly trace the activity at issue to an objective of Claimant's employment – one which Employer fervently encouraged.

As indicated by the Board's disagreement in the matter, we recognize that the case before us is a challenging one, due, in no small part, to the conflicting evidence that could support findings other than those made by the WCJ. However, as stated above, "it is **irrelevant** whether the record contains evidence to support findings other than those made by the WCJ; **the critical inquiry is whether there is evidence to support the findings actually made**." *A & J Builders*, 78 A.3d at 1238 (quoting *Minicozzi*, 873 A.2d at 29) (emphasis added). Because our inquiry confirms that the findings made by the WCJ are supported by substantial record evidence, we discern no error in the decisions below regarding the first issue.[8]

Regarding the second issue, Employer argues that Section 311 of the Act requires a claimant to afford notice of an injury within 120 days of the date of the injury. Petitioner's Brief at 25 (citing *Katz v. Evening Bulletin*, 403 A.2d 518 (Pa. 1979)). Because Claimant failed to afford Employer notice of a workplace injury, Employer believes that Claimant is ineligible for benefits. *Id*. at 26. Further, Employer rejects the WCJ's and the Board's rationale for finding Employer had

---

[8] Further, to the extent Employer argues that the WCJ's findings capriciously disregarded its own proffered evidence, we are mindful that the WCJ enjoys a "comparative advantage [in fact-finding] . . . over any reviewing body in making assessments that may depend, *inter alia*, upon the demeanor of the witnesses." *Daniels*, 828 A.2d at 1052. Here, all credibility determinations were resolved in Claimant's favor "without limitation . . . . it being observed Claimant was the only witness to testify both by deposition and at hearing." WCJ's Opinion at F.F. No. 8. In this instance, Claimant's hearing testimony provided the WCJ with the "ring of truth" necessary to resolve this matter in his favor. *Id*.

actual notice of the injury. *Id*. at 27-28. In Employer's view, its conduct after learning of Claimant's injury was merely a courtesy, and at all relevant times both Employer and Claimant maintained that the injury was not in the course and scope of employment. *Id*. As evidence, Employer directs our attention to documentation written by Claimant's wife stating that the injury occurred "off the job." *Id*. Again, it is Employer's position that the WCJ erred by accepting Claimant's "uncorroborated" testimony over that of Employer's own witnesses. *Id*.

In any event, Employer argues that this case bears similarity to our Court's recent decision in *Hershey Company v. Woodhouse (Workers' Compensation Appeal Board)*, 300 A.3d 529 (Pa. Cmwlth. 2023). Petitioner's Brief at 28. Employer believes that *Hershey Company* is instructive, because, here, Claimant never communicated his belief that his injury was in the course and scope of his employment until he filed his claim petition. *Id*. at 30. Whereas in *Hershey Company* we found that, notwithstanding the employer's actual knowledge of claimant's injury, the employer was unaware that the injury was work related. *Id*. at 29-30. Thus, under Section 311 of the Act, the claimant failed to afford the employer with proper notice and was barred from receiving benefits. *Id*.

In response, Claimant again reminds us that we are to afford great deference to the WCJ's determination, but particularly so concerning his determination concerning notice. Respondent's Brief at 31. Claimant argues that per *Gentex Corp. v. Workers' Compensation Appeal Board (Morack)*, 23 A.3d 526 (Pa. 2011), when reviewing a notice determination, we are to be mindful that the Act has a humanitarian purpose intended to benefit injured workers. *Id*. at 31-32.

Claimant notes that Section 311 bars a claimant from receiving benefits if he does not provide his employer with notice that a workplace injury has occurred.

15

Respondent's Brief at 32 n.5. However, Claimant posits that this bar does not apply where, as here, the employer has actual knowledge of the injury. *Id*. at 33. Claimant believes that, given the circumstances, Employer should have known that the injury he suffered was work related. *Id*. at 33-34. Finally, Claimant argues that *Hershey Company* is distinguishable from the instant matter: whereas the employer in *Hershey Company* would have had no way of knowing the claimant's injury was work related, Employer here was aware of the circumstances surrounding the trip. *Id*. at 36-38.

Indeed, Employer is correct that "notice is a prerequisite to receiving workers' compensation benefits, and the claimant bears the burden of demonstrating that proper notice was given." *Gentex*, 23 A.3d at 534 (citing *C. Hannah & Sons Construction v. Workers' Compensation Appeal Board (Days)*, 784 A.2d 860, 864 (Pa. Cmwlth. 2001)). Section 311 of the Act provides:

> **Unless the employer shall have knowledge of the occurrence of the injury**, or unless the employe or someone in his behalf, or some of the dependents or someone in their behalf, shall give notice thereof to the employer within twenty-one days after the injury, no compensation shall be due until such notice be given, and, unless such notice be given within one hundred and twenty days after the occurrence of the injury, no compensation shall be allowed. However, in cases of injury resulting from ionizing radiation or any other cause in which the nature of the injury or its relationship to the employment is not known to the employe, the time for giving notice shall not begin to run until the employe knows, or by the exercise of reasonable diligence should know, of the existence of the injury and its possible relationship to his employment. The term "injury" in this section means, in cases of occupational disease, disability resulting from occupational disease.

16

77 P.S. §631 (emphasis added). Further, Section 312 of the Act requires that this notice "inform the employer that a certain employe received an injury, described an injury, described in ordinary language, in the course of his employment on or about a specified time, at or near a place specified." 77 P.S. §632.

In *Hershey Company*, 300 A.3d at 530, the claimant suffered from a preexisting diabetic foot ulcer, treatment of which required special footwear. The employer did not permit the claimant to wear the footwear on the factory floor because he worked in the food industry, nor did it permit him to sit down while working. *Id*. at 530-31. After a brief absence, the claimant returned to work with the restriction that he wear regular shoes due to his foot ulcer. *Id*. After passing out at work, the claimant underwent emergency foot surgery which eventually necessitated a below-the-knee amputation of his right leg in a separate procedure. *Id*. The employer was notified of the claimant's emergency surgery only. *Id*. More than a year and a half later, the claimant filed a claim petition arguing that the injury was work[]related and caused by having to stand for long periods of time on the employer's factory floor. *Id*. The WCJ granted his claim petition as to some of his injuries, but not as to the below-the-knee amputation, finding he failed to afford the employer with proper notice of that injury. *Id*. The Board reversed, finding the employer had "constructive notice" as to the full extent of the claimant's injuries. *Id*. at 532.

Ultimately, this Court reversed the Board, observing that the purpose of Section 311 is to "protect[] the employer from stale claims for accidental injuries, of which [the employer] would have no knowledge, made after the opportunity had passed for a full and complete examination thereof." *Hershey Company*, 300 A.3d at 533 (citation omitted). Notwithstanding the claimant's admission that he knew

17

his injury was work related as soon as it happened, he failed to communicate this belief to his employer which was under the impression that this occurred because of his preexisting condition. *Id*. at 536. The claim petition filed by the claimant was in excess of the 120-day period permitted by Section 311, such that we found that the claimant was barred from receiving benefits. *Id*.

In *Gentex*, 23 A.3d at 534, our Supreme Court observed that the issue of notice in a workers' compensation matter "is a mixed question of fact and law" and considered what constitutes a sufficient degree of specificity for notice under Section 312 of the Act. Therein, the claimant, who worked for her employer as a lens inspector for Air Force helmets for 45 years, began suffering from pain and swelling in her hands. *Id*. at 529-30. Eventually, she informed her employer she could no longer work due to the pain and continued to apprise the employer of her condition, but noted in documentation that she did not believe her condition to be work related. *Id*. at 530. Upon visiting a rheumatologist, the claimant obtained diagnoses and was informed of her doctor's conclusion that her injuries were work related. After a failed attempt at returning to work, the claimant left a voice message with her employer expressing that her injury was work related. *Id*. at 530-31.

After filing a claim petition, the WCJ and Board found in favor of the claimant, but we reversed. *Gentex*, 23 A.3d at 531-32. We agreed that the claimant's notice was timely, but reasoned that she did not sufficiently describe her injury to the employer under Section 312. *Id*. at 532. Ultimately, however, the Supreme Court reversed our decision, noting that "what constitutes adequate notice pursuant to Section 312 is a fact-intensive inquiry, taking into consideration the totality of the circumstances." *Id*. at 537. Thus, after reviewing the totality of the circumstances, the Supreme Court found the claimant's series of communications with the employer

18

adequately informed the employer of the nature of her condition and her voicemail to employer sufficiently notified the employer that the injury was work related. *Id.* at 537-38. Importantly, the Supreme Court also reiterated that "even imperfect notice can satisfy Section 312." *Id.* at 535; *see also Katz*, 403 A.2d at 520 ("While appellant admits that this notice was not 'letter perfect,' we adopt the reasoning of the Superior Court that 'a meritorious claim ought not, if possible be defeated for technical reasons and . . . technicalities are not looked upon with favor in compensation cases.[]'").

As indicated, Section 311 explicitly permits claimants to recover workers' compensation benefits, even in the absence of formal notice, where the employer has actual knowledge of the injury. As such, here, Employer's decision to fly Claimant's mother to the hospital where he was being treated and to book a hotel room for her to stay in pending his treatment belies Employer's arguments now because Employer necessarily had *actual knowledge* of Claimant's injury and the circumstances giving rise to it. Additionally, the instant matter is readily distinguishable from *Hershey Company* because Claimant's contention that the injury was work related was not obfuscated by a preexisting condition. Rather, here, Employer had knowledge of the trip, its participants, Claimant's desire to recruit or promote these participants, and his resulting severe injuries. *See*, *e.g.*, WCJ's Opinion at S.E. No. 5b, d-e. For the same reasons, and as *Gentex* instructs, we are persuaded that the totality of the circumstances indicate that Employer was aware of Claimant's work trip and the severity of his injuries which provided Employer with sufficient notice under Section 312. Although his notice may have been imperfect, it still served as proper notice of injury under the Act.

19

To conclude, we agree with the Board and the WCJ that Claimant's injury occurred within the course and scope of his employment and that the WCJ's finding was supported by substantial evidence. We also have no difficulty concluding that Employer was afforded proper notice of this injury under the Act, even if this notice was imperfect.

Accordingly, the Order of the Board is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Power Home Remodeling, Inc., :
:
               Petitioner :
     v. : No. 1303 C.D. 2023
:
Matthew Hess (Workers' :
Compensation Appeal Board), :
:
              Respondent :

# **O R D E R**

AND NOW, this 8<u>th</u> day of <u>October</u>, 2024, the October 18, 2023 order of the Workers' Compensation Appeal Board is **AFFIRMED**.

_____
MICHAEL H. WOJCIK, Judge